OPINION OF THE COURT
Margaret Taylor, J.
“reasonable application” standard
IN RPAPL 735
It is the practice in the residential landlord-tenant part of the Civil Court in New York County in nonpayment proceedings to submit to the Judges sitting in that part numerous applications for default judgments for possession of residential premises. During the week beginning January 11, 1982, 201 such applications in which the tenants had not appeared were submitted to this court. In 196 (including the instant matter) jurisdiction over the tenants had allegedly been obtained as a result of conspicuous place service of the notice of petition and petition (the papers) pursuant to RPAPL 735.
The affidavits of service in the vast majority of these cases alleged a single attempt by the process server to obtain admittance to the premises between the hours of *168 9:00 a.m. and 4:30 p.m. to effect service by personal delivery of the papers either to the tenant or a person of suitable age and discretion residing or employed at the premises. The question presented to the court, therefore, is whether such an attempt satisfies the requirements of RPAPL 735 which permits “nail and mail service” only when admittance to the premises cannot be obtained and such persons found “upon reasonable application”.
The “reasonable application” standard of RPAPL 735 requires less of a process server than does the “due diligence” standard of CPLR 308 (subd 4). At the very least, however, this lesser standard requires that service be attempted at a time when the process server can “reasonably expect the tenant to be at home” (Parkchester Apts. Co. v Hawkins, 111 Misc 2d 896, 897). Absent information which would lead the process server reasonably to believe that the person sought to be served (or even a person of suitable age and discretion) was generally at the premises during the usual working hours of the week, it is the view of this court that a single visit to a residence on a weekday between the hours of 9:00 a.m. and 4:30 p.m. does not constitute reasonable application within the meaning of RPAPL 735. Indeed, such a visit is “most unlikely to succeed.” (See Monacelli v Khoury, NYLJ, Nov. 10,1980, p 7, col 4.) Thus, the process server’s allegation in the instant case, that he attempted to serve the tenant personally by ringing the bell and knocking on the door of tenant’s home (apartment 1-D) at 1:47 p.m. on December 17, 1981, a Thursday, is not sufficient to meet the statutory requirement of reasonable application.
CONSPICUOUS PLACE SERVICE AFFIDAVITS OF NONMILITARY SERVICE
Although the process server was unable to effect personal contact with the tenant in this case, significantly, one Nesto Diaz, the investigator employed by petitioner landlord’s attorney to ascertain whether the tenant was a member of the armed forces, had no such difficulty. Mr. Diaz swears that at an unspecified time on the very same day of the alleged conspicuous place service, December 17, 1981, he called at apartment 1-D and conversed with the *169 tenant. Mr. Diaz swears that the tenant personally stated to him on that date that he was not in the military service.
This fact pattern is pervasive in applications for default judgments of possession in landlord-tenant summary proceedings. As noted above, in 196 of the 201 proceedings in which default judgments were sought, the process servers were unable to effect service either by personal delivery to the tenants or by substituted service and, instead, claimed conspicuous place service. In 162 (or 83%) of these same matters, investigators employed by the attorneys representing the landlords were successful in making direct personal contacts with the tenants for the purpose of ascertaining that such tenants were not in military service so that affidavits of compliance with the Soldiers’ and Sailors’ Civil Relief Act (US Code, tit 50, § 520) could be filed. These contacts between the investigators and the tenants occurred in some cases before the petitions were even prepared, in some cases between the date of the petitions and the date service was attempted, in some cases (as in the instant matter) on the very day the process servers could not locate the tenants, and in some cases after there was conspicuous place service.
Obviously, the landlords should employ their investigators to effect service rather than their process servers, inasmuch as the investigators, almost uniformly, seemed to have no problems at all in gaining admittance to the premises and establishing direct personal contact with the tenants. That the process servers in all these matters were unable to gain admittance and make any contact whatsoever with the tenants, when the investigators employed by the landlords’ attorneys had no such difficulties, taxes the credulity of the court.
Indeed, the court is struck by the clairvoyance displayed by many of the attorneys representing these landlords in arranging for the interviews between the investigators and the tenants long in advance of the defaults. The court submits that the inescapable conclusion to be drawn is that there is either widespread violation of section 520 of title 50 of the United States Code or the process servers employed by the landlords are not making any good faith reasonable applications to obtain admittance for the pur *170 pose of effecting service by personal delivery or substituted service. It is suggested that this is a problem warranting investigation by the appropriate authorities.
VERIFICATION OF PETITION BY ATTORNEY
In the instant proceeding the petition is verified not by the party, i.e., the petitioner landlord, but rather by the attorney for the petitioner landlord. This is a widespread practice and, indeed, more than 75% of the petitions submitted to the court in support of applications for default judgments were verified by attorneys rather than parties.
The law provides that the petition be verified. Verification is required because it fosters honesty and ensures the reliability of the contents of the petition. (.Fisch v Chason, 99 Mise 2d 1089.) Although verification of a pleading by an attorney is permitted under CPLR 3020 (subd [d]), such verification is allowed only if the party is a foreign corporation or is not in the county where the attorney has his office or if all the material allegations of the pleading are within the personal knowledge of the attorney. RPAPL 741, as amended in 1979, permits an attorney to verify a petition on information and belief notwithstanding the fact that the petitioner landlord is in the county where the attorney has his office.
The court concludes, however, that the instant verification of the petition by the attorney, claiming reliance on the 1979 amendment of RPAPL 741 and CPLR 3020 (subd [d]), is defective. It does not comply with CPLR 3021 which specifically requires that if the verification “is made by a person other than the party, he must set forth in the affidavit * * * the reason why it is not made by the party.” (Emphasis supplied.) It is the view of this court that the 1979 amendment to RPAPL 741, which permits an attorney to verify a petition on information and belief notwithstanding the fact that the attorney and petitioner are in the same county, does not eliminate the requirement imposed by CPLR 3021 that the verification set forth the reason why it is not made by a party.
If verifications are to have any meaning at all, they should, with few exceptions, be made by parties, not lawyers. If the party is not verifying the pleadings, the explanation required by CPLR 3021 must be provided.
*171 For the reasons set forth above, the court declines to sign a final judgment of possession in favor of the petitioner landlord and dismisses the petition.