OPINION OF THE COURT
Gabriel M. Krausman, J.
But for fortuitous circumstances Darlene Diamond’s tale of anguish and human suffering could have ended, as do so many landlord-tenant cases, in unwarranted tragedy. Luckily for Darlene Diamond the law offices of Community Action for Legal Services took her case and expended the time and energy necessary to see that she was vigorously represented and that this matter was brought to a just conclusion.
This action was initiated by landlord petitioner to recover rent allegedly owed by respondent tenant. On August 13, 1982 respondent Darlene Diamond was evicted from her premises at 74-02 Bay Parkway, apartment No. E-6, in Brooklyn by Marshal Marchisotto. On August 16, 1982 respondent moved by order to show cause for restoration of possession to the premises. The matter was set down *404 for a hearing to be held on August 18, 1982. On that date petitioner stated that his process server refused to testify at the hearing unless his attorney was present while he testified and therefore requested that the matter be adjourned until August 20. The application for adjournment was granted and the matter was set down for a hearing on the issue of service, if in fact there was service and if service was made the sufficiency of such service under RPAPL 735. The matter was also set down for a hearing with regard to the sufficiency of the eviction by the marshal.
RPAPL 735 provides, in the first instance, service of the notice of petition and petition shall be accomplished by personal service upon respondent. If after “reasonable application” to gain admittance, admittance cannot be gained only then may service be made by “affixing a copy of the notice and petition upon a conspicuous part of the property sought to be recovered or placing a copy under the entrance door of such premises; and in addition, within one day after such * * * affixing or placement, by mailing to the respondent both by registered or certified mail and by regular first class mail”.
As concerns the issue of whether process was served in this case, from the evidence adduced at trial it is clear that Martin Pollack, the process server, effectuated neither personal nor conspicuous-placed service upon respondent on July 7,1982. In open court Mr. Pollack testified and the affidavits of service filed in court, in cases where Mr. Pollack was the process server, show that he failed to record in his log a number of instances in which he served or allegedly served process on July 7, 1982. Thus, the veracity of the log entries and of Mr. Pollack’s testimony concerning them or his other activities on that day is called into question.
Even more revealing is the fact that the affidavit of service sworn to by Mr. Pollack in the case of Weintraub v Puig (L & T Index No. 74251/82), is in direct conflict with Mr. Pollack’s trial testimony and log entry with regard to the time of his attempted service upon Darlene Diamond. The testimony and log entry show that on the morning of July 7, 1982 at 8:25 a.m. Mr. Pollack made an attempt to *405 serve process upon Darlene Diamond. The sworn affidavit in the Puig case states that he made conspicuous-placed service upon the respondent in that action at 240 Ocean Parkway, apartment No. 5-G, at 8:30 a.m on July 7, 1982, the same date in question. To reconcile the time frames in the testimony of Mr. Pollack and the sworn affidavit, this court would have to believe the incredulous story that he made service upon Darlene Diamond at 7402 Bay Parkway and in a five-minute period descended six floors, traveled over 40 blocks to 240 Ocean Parkway, ascended five floors to apartment No. 5-G and made service upon Rachel Puig. Acceptance of that incredible story is tantamount to believing the fiction that Mr. Pollack has the uncanny ability to be in two places at one time. As a result of Mr. Pollack’s conflicting testimony this court has grave doubts about the credibility of any of his statements.* The plausible account of the facts in this case is that on the morning of July 7, 1982 at 8:25 a.m. Martin Pollack never came to 7402 Bay Parkway and that he never served the notice of petition and petition upon Darlene Diamond. This explanation is consistent with the testimony of respondent and her family that though they were at home at the time process was allegedly served they did not hear anyone at the door nor did they find a copy of the petition and notice of petition affixed to or placed under the door. What is unfortunate is that as a result of Mr. Pollack’s unbecoming and unprofessional conduct innocent people have suffered unnecessarily-_
*406 Accordingly, this court finds as a matter of fact that the petitioner failed to make personal or conspicuous service upon respondent pursuant to RPAPL 735.
Although no further findings are required to render a decision in this case, because of the important ramifications of this matter it is necessary to address other issues raised by this litigation.
Even accepting Mr. Pollack’s incredible account, that he was at respondent’s premises at 8:25 a.m. on July 7, the conspicuous-placed service he claims to have made is deficient as a matter of law. RPAPL 735 provides that conspicuous service shall be made only after the process server was unable to make personal service upon reasonable application to gain admittance. The efforts required for the attempted service under the “reasonable application” standard need not rise to the level of the efforts required to be expended under the “due diligence” standard pursuant to CPLR 308. (Parkchester Apts. Co. v Hawkins, 111 Misc 2d 896 [App Term, 1st Dept].) Nonetheless, even under the relaxed standard, prior to resorting to conspicuous-placed service, the process server must make a good-faith effort to gain admittance to the premises. Reasonable application contemplates not only that the process server knock at the door in a manner designed to alert the residents that they are being summoned, but ample time must be allowed for the residents to respond to the knock before the process server moves on. Mr. Pollack’s efforts in this instance failed to come within the ambit of that relaxed standard. The credible evidence in this case establishes that at 8:25 a.m. on July 7 Darlene Diamond and her family were at home and awake. If as Mr. Pollack testified he knocked, and presumably it was audible, or he rang the bell he would have been heard. He also testified that after knocking he waited, heard no response, made conspicuous-placed service and left. Of the 20 services recorded in the log, only two of which were made by personal service, the intervals between attempted services in the same building on different floors never exceeded three minutes. All of this pointing out the fact that if Mr. Pollack performed his task he did so with extreme haste, as if escaping from a fire, and even if his knock was adequate, which is doubtful, he left *407 the area without giving respondent enough time to answer the door. Mr. Pollack’s lack of good faith and concern in carrying out the mandates of his office is reprehensible and is condemned. This court finds as a matter of fact and law that the attempted personal service, if indeed it was made, did not rise to the level of “reasonable application”. Since a reasonable attempt at personal service was not made, resort to the use of conspicuous-placed service was improper in this case.
To bring this matter to a just conclusion the conduct of the landlord, Mr. Mallozzi, and the effect of his conduct on the sufficiency of the warrant of eviction in this case must be addressed. If a warrant of eviction was properly executed, where a fraud has been perpetrated in facilitating that execution the court has jurisdiction to invalidate that warrant and restore the respondent to possession. (Iltit Assoc. v Sterner, 63 AD2d 600; Papp v Maffei, 64 Misc 2d 739; Matter of Albany v White, 46 Misc 2d 915.) On a number of occasions since the inception of this matter Darlene Diamond spoke with Mr. Mallozzi and he assured her that everything could be worked out and that she need not worry. When testifying at trial, Mr. Mallozzi had great difficulty in remembering when the proceedings wére initiated, when he spoke with Mrs. Diamond, when in fact he spoke to anybody or took any action. He was unable to recall the contents of the conversations he had with the marshal or Mrs. Diamond. Later he only remembered that he informed Darlene Diamond that she owed rent, and when questioned about his reassuring her, Mr. Mallozzi became very uneasy and finally replied that he was unable to recall if he gave her assurances about the eviction. Mr. Mallozzi conveniently remembered and related to this court only those events which he thought would bolster his case and feigned confusion with regard to matters that could hurt him. Based on all the testimony adduced by petitioner it is clear that there was a concerted and deliberate attempt by the landlord to effectuate his ultimate goal, the eviction of Darlene Diamond. The resulting eviction was “the culmination of a contrived and calculated fraud not only upon the immediate victims but on this court as well.” (Papp v Maffei, 64 Misc 2d, at p 740, supra.) Accord *408 ingly, the warrant of eviction issued to Marshal Marchisotto is without any force and effect.
Pursuant to an order of this court issued on August 24, 1982 the clerk of this court was directed to enter a judgment of possession in favor of respondent. At the time of this decision judgment has been entered and respondent has been restored to her abode.

 The log records that on July 7, 1982 at 9:21 a.m. Mr. Pollack attempted service upon Alma Henriquez at 533 East 2nd Street, Brooklyn, apartment No. G-5, at 9:23 a.m. of the same day he attempted service upon Rovina Rice at the same address, apartment No. G-4 and at 9:26 a.m. he attempted service upon Elsie Donald Campos at the same address, apartment No. B-l. Thus, from 9:21 a.m. to at least 9:26 a.m. on the morning of July 7, 1982 Mr. Pollack was physically in the premises at 533 East 2nd Street. The affidavits of service sworn to and filed in court, in a number of cases not recorded in the log, show that at 9:18 a.m. on the 7th of July, Mr. Pollack made conspicuous service upon Annette and Mary Phillips (L & T Index No. 74263) at 141 East 21st Street, apartment No. 2-H, at 9:22 a.m. he made conspicuous service upon Kathleen Bamswell (L & T Index No. 74258) at 131 East 21st Street, apartment No. 6-H and at 9:27 a.m. on the 7th of July, 1982 he made conspicuous-placed service upon Beatrice Banks (L&T Index No. 74260) at the above address, apartment No. 4-F. Thus, based on the affidavits of service filed in court, between 9:18 a.m. through 9:27 a.m. of the morning in question Mr. Pollack was not, as his log indicates, at 533 East 2nd Street in Brooklyn. Unless Mr. Pollack was in more than one place at the same time he lied to the court.
Although numerous other conflicts between Mr. Pollack’s log and sworn affidavits exist, the above example suffices to illustrate the total lack of credibility and the extent of Mr. Pollack’s deceitful conduct.