■ Brooklyn Heights Realty Co., Appellant, v William Gliwa, Respondent, and Marcia Rogal, Respondent-Respondent. — In a proceeding to recover possession of an apartment occupied by respondent Marcia Rogal, the petitioner landlord appeals (by permission) from an order of the Appellate Term of the Supreme Court for the Second and Eleventh Judicial Districts, dated February 23, 1982, which reversed a judgment of the Civil Court of the City of New York, Kings County (Pellegrino, J.), dated November 26, 1980, and dismissed the petition. Order affirmed, with costs. In 1974, respondent William Gliwa entered into a lease with petitioner's predecessor in title, Patio Realty Co., covering an apartment at 65 Montague Street, Brooklyn, for a period of two years. A provision which was typed into the form lease noted that the apartment was for the use and occupancy of Gliwa's immediate family, consisting of "husband and wife". At the time, Gliwa was engaged to respondent Marcia Rogal and, although the couple were never legally married, they lived in the apartment as husband and wife. Testimony indicates that the superintendent knew of Rogal's presence in the apartment and regarded her as "Mrs. Gliwa". At the end of 1977 or the beginning of 1978, Gliwa moved out of the subject premises, having first signed a three-year renewal of the original lease. The petitioner, Brooklyn Heights Realty Co., bought the apartment building in 1978. Rogal continued to live in the apartment after Gliwa's departure, paying rent by bank check after withdrawal of funds from her savings account. In October, 1979, Rogal began to tender rent checks drawn on her personal account and bearing the name "Marcia A. Rogal". Testimony indicates that petitioner then sought assurances from her that she was married to Gliwa. At first, Rogal claimed to be legally married, but thereafter admitted she was not. Petitioner brought a holdover proceeding seeking possession of the apartment on the ground that Rogal had no rights under the lease and was remaining in the apartment unlawfully after Gliwa left. The Civil Court granted the petition and ordered respondent Rogal to vacate the apartment. The Appellate Term reversed and dismissed the petition, stating that the evidence established that Rogal had been a legal tenant since the beginning of the tenancy (i.e., 1974) and was thus entitled to remain in possession. We affirm upon the ground that proper service of the notice of petition and petition was never effectuated and therefore the defense of lack of personal jurisdiction asserted in Rogal's answer should have been sustained. Service was made by affixing the notice of petition and petition to the door of the apartment and by thereafter mailing the same pursuant to RPAPL 735. Before taping the notice to the apartment door, the process server rang the doorbell, but no one answered. This attempt at service took place on Monday, August 28, 1980, at 3:40 p.m. Under RPAPL 735 (subd 1), a "reasonable application" must be made to effect personal or substituted service before resort is taken to conspicuous service. While the effort the process server must make is less than that required under CPLR 308 (subd 4) ("due diligence"), the effort must have some expectation of success (*Palumbo v Estate of Clark*, 94 Misc 2d 1). The attempt must be made at a time when the process server could reasonably expect someone to be home (*Parkchester Apts. Co. v Hawkins*, 111 Misc 2d 896). Here, personal service was attempted at a time when most people are at work. Moreover, the process server had previously attempted to serve process during normal working hours but had similarly found no one at home. Hence, on this occasion, the process server could not have reasonably expected that he would succeed in effectuating personal service. Accordingly, we need not reach the substantive issue raised on this appeal. Brown, Niehoff and Rubin, JJ., concur.

O'Connor, J. P., concurs, with the following memorandum: While I concur with my brethren that personal jurisdiction was not obtained over respondent

Rogal, I must express my view that, apart from any issue of a waiver of terms in the agreement of lease, Rogal's defense of marital status discrimination (Executive Law, § 296, subd 5, par [a], cl [1]) could not, on this record, have been sustained on the merits. The evidence merely showed an intent and effort on petitioner's part, as found by the trial court (Pellegrino, J.), to enforce a facially reasonable condition in that lease, which demised the premises solely to respondent Gliwa as "[t]enant" for occupancy as a dwelling apartment by Gliwa and his "immediate family consisting of husband & wife". As a condition of the lease, the tenant was obligated to limit occupancy to his "immediate family and employees". Rogal admitted that she was not a member of the tenant's immediate family. She was not married to him or adopted by him, and she was not his employee. By the terms of the lease negotiated by the parties, her rights in the demised premises were *intended to be derivative;* only Gliwa entered into the lease. Now, however, Rogal claims entitlement to the status of tenant without regard to the negotiated lease agreement, on the ground that the petitioner's refusal to accept her as a tenant after Gliwa's departure constituted discrimination on the ground of marital status. I conclude, contrary to the First Department's decision in *Hudson View Props. v Weiss* (86 AD2d 803, revg 109 Misc 2d 589, for reasons stated in dissent of Asch, J., at App Term and opn of Wilk, J., at Civ Ct), that her argument is devoid of merit. It is not Rogal's marital status per se, but the degree of consanguinity or affinity to the tenant, Gliwa, that the parties settled on as defining the extent of the tenant's leasehold with respect to human occupancy. Respondent Rogal cannot have it both ways. Rather than bind herself to the usual obligations of tenancy by signing the lease as a cotenant with Gliwa, she *elected* to remain a stranger to the agreement and leasehold with the obvious intention of limiting her rights — and exposure under the agreement — to whatever would be created under that agreement and at law by virtue of her expected status as the tenant's spouse. That was the bargain struck, and there is no evidence of a discriminatory animus on the part of petitioner's predecessor against unmarried couples at the time the original lease was presumably offered to both Gliwa and Rogal. On the contrary, it would be odd indeed for any sensible landlord to prefer contracting with *one* tenant (while granting him the right to permit occupancy by his immediate family and employees) to obtaining the signatures of as many of the intended occupants as possible. The criterion used in selecting tenants is not marital status but financial resources; hence, the more signatories on the lease, the better. In short, Rogal has now changed her mind about the lease agreement. She now demands petitioner to allow her to continue in occupancy or offer her a tenancy based on the fact that she had lived for some time in the demised premises by virtue of the tenant's permission — permission that Gliwa was not competent to give under the lease agreement. Petitioner, of course, cannot be compelled to accept Rogal's demand for an offer of a lease agreement on such grounds. Furthermore, my upholding of the balance of the parties' rights as struck by their negotiation under ordinary rules of contract and real property law cannot be characterized as harsh or inequitable. The legal consequences of respondent Rogal's election not to enter the lease with Gliwa were foreseeable by any reasonably prudent person. Her occupancy of the apartment in question was at the apparent sufferance of Gliwa. Had she wished at any point to secure her position without marrying him and without renegotiating the lease, she could have negotiated with him for a sublease or assignment. The position in which she finds herself, therefore, was the product of her own making — not of the petitioner's alleged discriminatory purpose. I therefore join in the result reached by the majority but would reject, were this court to reach the merits, the conclusion of the Appellate Term that respondent Rogal was a cotenant from the beginning of

the tenancy insofar as that conclusion may have been based on her discrimination argument.