OPINION OF THE COURT

Per Curiam.

Order dated December 9, 1981 is affirmed, with $10 costs.
Landlord initiated this nonpayment proceeding on November 16, 1979. Tenant failed to answer the petition and a default final judgment of possession was awarded in favor of the landlord on January 14, 1980. Following tenant’s eviction on February 1,1980, the tenant, by order to show cause dated March 6, 1980, moved to vacate the judgment of possession upon the grounds that he had never been served with the petition and notice of petition. That *459 motion was granted to the extent of ordering a traverse, which was held on December 9, 1981.
At traverse landlord’s licensed process server testified that on Friday, November 16, 1979 at 12:28 p.m., he went to the tenant’s apartment, knocked on the door several times, waited approximately two and one-half minutes, and, “hearing no reply or nothing”, taped a copy of the petition and notice of petition to the tenant’s door. The process server further testified that later that same day he mailed copies of the petition and notice of petition to the tenant by certified mail, for which he received a certified receipt. The record also contains an affidavit of service dated November 16, 1979 in which the landlord’s process server states that he effectuated conspicuous place service of the petition and notice of petition upon the tenant at 12:28 p.m. on November 16, 1979.
The tenant testified on his own behalf, and despite some confusion in the record on this point, it is apparent that tenant was at work on November 16, 1978, at the time the process server attempted to personally serve tenant at his apartment. The court below crediting the testimony of landlord’s process server held service of process had been properly effectuated pursuant to RPAPL 735.
During the traverse, tenant attacked the credibility of the testimony of landlord’s process server. Tenant did not at that time suggest that the mode of service described by the process server was itself insufficient to confer jurisdiction. On appeal the tenant, relying principally upon the relatively recent authority of Parkchester Apts. Co. v Hawkins (111 Misc 2d 896) and S.P.S.G., Inc. v Collado (113 Misc 2d 167, 168), argues that even accepting the truth of the process server’s testimony at traverse, proper service was not made.
In Parkchester Apts. Co. v Hawkins (supra), tenant sought to vacate a default judgment of possession in favor of the landlord upon the ground that he had not been properly served. In that case conspicuous place service was effectuated when the landlord’s process server was unable to make personal or substituted service upon a single visit to tenant’s apartment at 7:35 a.m. on a weekday. In sustaining that service we observed (p 897):
*460 “RPAPL 735 (subd 1) permits nail and mail [conspicuous place] service where admittance to the premises cannot be obtained ‘upon reasonable application.’ The process server’s efforts are not to be judged by the ‘due diligence’ standard for service of process in ordinary actions imposed by CPLR 308 (subd 4). ‘A lower grade of effort’ is contemplated in exacting ‘reasonable application’ to the extent that the process server ‘may ring once (or twice if so moved) and if such mild, lawful efforts come to naught, he may proceed with posting and mailing’ (Coulston v J K L Founding Corp., NYLJ, March 20, 1974, p 17, col 7, as quoted in Hospitality Enterprises v Fuego Rest. Corp., NYLJ, June 5, 1980, p 11, col 4).
“The primary purpose of summary proceedings is to enable the landlord to regain possession quickly and inexpensively. While more is required than a mere recital authorizing nail and mail service, where the testimony of the process server established that he was on the premises at an hour when he could reasonably expect the tenant to be at home, and rang the bell, the requirements of RPAPL 735 have been met (cf. Palumbo v Clark, 94 Misc 2d 1; see, also, Velazquez v Thompson, 451 F2d 202).”
In the instant appeal tenant argues that because conspicuous place service was effectuated after a single, unsuccessful attempt by landlord’s process server to make personal or substituted service at tenant’s apartment during normal working hours (i.e., 12:28 p.m. on a Friday), “reasonable application” as required by RPAPL 735 was not made to obtain admittance to the premises for the purpose of making either personal or substituted service (see Palumbo v Estate of Clark, 94 Misc 2d 1, 3-4; RPAPL 735; S.P.S.G., Inc. v Collado, supra).
As pointed out by our dissenting colleague, support for the tenant’s argument is to be found in recent determinations of the Appellate Division, Second Department (Barnes v City of New York, 70 AD2d 580 [Martuscello and Hopkins, JJ., in dissent], affd 51 NY2d 906; Brooklyn Hgts. Realty Co. v Gliwa, 92 AD2d 602; Carfora v Pesiri, 89 AD2d 237). However, we reject adoption of an inflexible rule that an unsuccessful attempt at personal or substituted service made at a person’s home during normal *461 working hours is, per se, insufficient to meet the “reasonable application” standard of RPAPL 735.
The service provisions of RPAPL 735 are not violative of due process, and we have previously recognized that a single attempt to make personal or substituted service at a person’s home may satisfy the “reasonable application” standard of RPAPL 735 and thus serve as a proper predicate for conspicuous place service (.Parkchester Apts. Co. v Hawkins, supra). It is true that in Parkchester Apts. Co. v Hawkins (supra), this court, in sustaining conspicuous place service, observed that the process server — having testified that he attempted personal or substituted service upon tenant at his home at 7:35 a.m. — indicated that he had been on the premises at an hour when he could reasonably expect the tenant to be at home. That observation in Parkchester Apts. Co. v Hawkins (111 Misc 2d 896, supra) should not be construed as holding that an unsuccessful attempt at personal or substituted service made during what may be considered conventional working hours is incapable of satisfying the “reasonable application” standard of RPAPL 735. We do not believe that the Legislature, in framing RPAPL 735, intended to foreclose unsuccessful attempts at personal or substituted service made at a person’s home during “normal work hours” from satisfying the “reasonable application” standard of RPAPL 735. In so concluding, we stand with the dissent in Barnes v City of New York (supra, p 581) wherein Justice Martuscello (Hopkins, J., concurring) observed: “To make it a hard and fast rule that ‘due diligence’ [much less, as in this appeal, ‘reasonable application’] requires any particular formula of further searching as to place of employment or going to the home at late hours of the night would constitute a judicial creation of a standard which the Legislature never indicated was necessary.” (See, also, Gabe Equities v Johnson, NYLJ, Nov. 18, 1982, p 15, col 1.) Indeed, in a society characterized by increasingly flexible work hours, substantial physical mobility, diverse living arrangements, and varied life-styles, it is illogical to conclude that attempts to make personal or substituted service at a person’s home which are undertaken during so-called normal working hours are, ipso facto, precluded from satisfy *462 ing the RPAPL 735 “reasonable application” standard. We are of the opinion that in the absence of actual foreknowledge on the part of a process server that he will be unable to effectuate personal or substituted service on a would-be defendant or respondent during normal working hours, unsuccessful attempts to make personal or substituted service at a person’s home during “normal working hours” may generally be utilized as predicates for conspicuous place service.