■ EIGHT ASSOCIATES, Respondent, v MICHAEL HYNES, Appellant. — Order of the Appellate Term, entered June 24, 1983, affirming an order of the Civil Court, New York County (Brandveen, J.), dated December 9, 1981, which denied a motion by respondent-appellant Hynes to vacate a default judgment of possession entered in favor of petitioner-respondent landlord Eight Associates, is reversed, on the law and facts and in the exercise of discretion, the motion to vacate the default is granted and the petition dismissed, without costs. ¶ The petitioner landlord, Eight Associates, commenced a summary proceeding in November of 1979 to evict the tenant, Michael Hynes, from apartment 2H located at 230 East 71st Street. The basis of the petition was the failure of Hynes to pay two months' rent. The tenant defaulted and on January 14, 1980, a final judgment was awarded in favor of the landlord. The tenant was evicted on February 1, 1980. ¶ On March 6, 1980, about five weeks after

the eviction, tenant moved by order to show cause to vacate the final judgment entered on the default. A traverse hearing was not held until December 9, 1981. No explanation has been presented for the long delay between the date of the order to show cause and the hearing date. ¶ The issue raised at that hearing was whether the tenant had been properly served with the notice of petition and petition in the summary proceeding, in accordance with RPAPL 735. Charles Pakula, the process server, testified that he served the tenant on November 16, 1979. The manner of service employed by Pakula was conspicuous place service, as provided by RPAPL 735. His memory of the events had to be refreshed by reference to his log sheet and the affidavit of service. ¶ Specifically, Pakula stated that he went to the premises shortly after 12:00 noon on November 16, 1979, which was a Friday. He was let into the building by the superintendent. The building had an elevator. He proceeded to the tenant's apartment, which was on the street side of the building. The door was blue. He knocked on the door and waited about two and a half minutes. He then affixed a copy of the relevant papers to the apartment door, with scotch tape. This occurred at 12:28 P.M. Later that same day, he went to the post office and mailed a second copy by certified mail. ¶ On cross-examination, Pakula could not independently recall any other service he carried out on the date in question. The instant case stood out in his memory because a dog, belonging to a woman who said she was the landlord, sought to attack his foot. He claimed that he had knocked on the door five or six times and had rung the bell. Pakula left the premises within seconds of affixing the petition to the door. ¶ The tenant, Michael Hynes, then testified that as a result of the eviction, he moved to First Avenue. He first maintained that on November 16, 1979, he was home due to illness and had stayed in all day. He heard no one at his door anytime around 12:28 P.M. ¶ On cross-examination, tenant stated that he had returned to work immediately after his discharge from the hospital on November 13, 1979. He then said, maybe one day later. His working hours were 8:00 A.M. to 5:00 P.M. Eventually, tenant admitted confusing October 16, 1979, when he was home ill, with November 16, 1979, when he was at work. On redirect, he admitted the error in his testimony about being home on the date in question. He nevertheless maintained that he found nothing affixed to his door and never received the petition in the mail. ¶ The court decided that, based on the evidence, tenant had been served in accordance with RPAPL 735. It found Mr. Pakula to be credible and the tenant to lack credibility. The court denied the tenant's application to vacate his default. ¶ At Appellate Term, tenant contended that, even accepting the process server's version of the facts, he had not made a "reasonable application" pursuant to RPAPL 735 to effectuate either personal or substituted service before reverting to conspicuous place service. The basis of the argument was that one attempt to effectuate service during normal working hours was not reasonable as a matter of law. ¶ The majority at Appellate Term concluded that on the instant record, the process server made a "reasonable application" and stated that it would not apply an inflexible rule that one attempt during so-called "normal working hours" would not satisfy RPAPL 735's reasonableness standard. ¶ The dissent stated that it subscribed to the growing body of authority that unsuccessful attempts to make personal or substituted service at a dwelling place during normal working hours were per se an insufficient predicate for conspicuous place service. ¶ We reverse the order of Appellate Term. Under the facts present herein, one attempt to serve process during "normal working hours" did not satisfy the "reasonable application" standard set forth in RPAPL 735. In so doing we do not rule that such service during "normal working hours" would be insufficient under all circumstances. ¶ In a recent case in the Second Department, an attempt at service took place on a weekday at 3:40 P.M. That

court noted: "Under RPAPL 735 (subd 1), a 'reasonable application' must be made to effect personal or substituted service before resort is taken to conspicuous service. While the effort the process server must make is less than that required under CPLR 308 (subd 4) ('due diligence'), the effort must have some expectation of success (*Palumbo v Estate of Clark,* 94 Misc 2d 1). The attempt must be made at a time when the process server could reasonably expect someone to be home (*Parkchester Apts. Co. v Hawkins,* 111 Misc 2d 896)." (*Brooklyn Hgts. Realty Co. v Gliwa,* 92 AD2d 602.) ¶ The Appellate Term of this department has previously held that an attempted personal service at 7:35 A.M. which was unsuccessful, followed by "nail and mail" service, met the requirements of RPAPL 735 since the process server "was on the premises at an hour when he could reasonably expect the tenant to be at home" (*Parkchester Apts. Co. v Hawkins, supra,* at p 897). ¶ Before conspicuous place service may be employed, there must be a showing that "upon reasonable application" admittance to the premises cannot be obtained and/or a proper person cannot be found to whom the process may be delivered. "It is clear from the statutory scheme set forth in section 735 of the Real Property Actions and Proceedings Law that the 'conspicuous place' method of service was deemed to be the least desirable of the three methods made available. As a result, it was not made available initially at the option of the party but only after an attempt at substituted service failed. In that context, can it be reasonably said that any attempt — even one predestined to failure — is adequate? * * * [I]t is clear that the Legislature * * * thought not. While it is true that the Legislature removed the higher burden of 'due diligence' from the statute, it did not make conspicuous place service a method of service initially and unconditionally available" (*Palumbo v Estate of Clark,* 94 Misc 2d 1, 4, *supra*). ¶ The holding at Appellate Term would essentially allow conspicuous service at any time unless the process server has "actual foreknowledge * * * that he will be unable to effectuate personal or substituted service * * * during normal working hours". This would subvert the statutory scheme and rationale of RPAPL 735, and in practice, permit unconditional use of conspicuous service. The "reasonable application" standard of the statute would become meaningless, which was certainly not the intent of the Legislature (see *Palumbo v Estate of Clark, supra; Brooklyn Hgts. Realty Co. v Gliwa, supra*). ¶ Since the Civil Court did not have in personam jurisdiction over the tenant, the court, even after the eviction has taken place, may open the default and dismiss the petition (*Third City Corp. v Lee,* 41 AD2d 611). However, the appellant tenant may not be put back into possession, despite his excusable default, since there is a new tenant in possession who has not been made a party to these proceedings (*Oppenheim v Spike,* 107 Misc 2d 55). The tenant is relegated to an action for wrongful eviction. Concur — Carro, J. P., Asch and Bloom, JJ.; Fein and Alexander, JJ., dissent, each in a separate memorandum, as follows:

Fein, J. (dissenting). I concur in Justice Alexander's dissent. I would add that this case presents only a question of credibility as between the somewhat dubious testimony of the process server and the inherently contradictory testimony of the tenant. ¶ It should be resolved on that basis and not be utilized as a vehicle for practically repealing so much of RPAPL 735 as authorizes conspicuous place (nail and mail) service. ¶ The emphasis on the fact that the process server made only one attempt to serve process during "normal working hours" demonstrates the point. ¶ The majority concludes that the "one attempt to serve process during 'normal working hours' did not satisfy the 'reasonable application' standard set forth in RPAPL 735. In so doing we do not rule that such service during 'normal working hours' would be insufficient under all circumstances." If this means that two, three, four or more similar attempts would be sufficient to satisfy the statute, then the

question of the particular hours during wich the tenant works becomes irrelevant, and the only pertinent factor is the number of visits made by the process server. This is hardly the intent of the statute. On the other hand, if it means the process server or the landlord must determine the tenant's "normal working" hours, it engrafts upon the statute a condition not to be found there. ¶ I respectfully suggest that the majority is adopting a rule that requires the process server to determine in some manner what are the normal working hours of the subject of the service. Moreover, if he is a person who leaves for work at 6:00 A.M. or returns at 10:00 P.M., service may only be effected during the night. How a process server, or a landlord, is to acquire such information, or effect such service, remains unexplained.

Alexander, J. (dissenting). I must, most respectfully, decline to join my brethren in the emasculation of RPAPL 735. Their ruling today effectively eliminates conspicuous place service (nail and mail) as a basis for acquiring jurisdiction in a summary proceeding. Henceforth, any such service during "normal working hours" will be ineffective to confer jurisdiction since it will not constitute "reasonable application" under the statute. And while the majority do not define "normal working hours" they presumably mean anytime "on a weekday between * * * 9:00 A.M. and 4:30 P.M." (*S.P.S.G., Inc. v Collado*, 113 Misc 2d 167, 168), that time "when most people are at work." (*Brooklyn Hgts. Realty Co. v Gliwa*, 92 AD2d 602.) What then, of the tenants who work at times other than "normal working hours" (e.g., from 4:00 P.M. to 12:00 A.M. or 12:00 A.M.to 8:00 A.M.). Are they subject to being dispossessed based upon an affidavit showing attempted service at 6:30 P.M. in the one case or 7:00 A.M. in the other? ¶ As a result of today's ruling, the only time a landlord can safely rely upon such service is when he knows that the tenant's actual working hours are other than "normal working hours", or at least has some information indicating that the tenant or a person of suitable age and discretion was likely to be found on the premises during usual working hours of the week. ¶ The majority disclaim any intention to establish a rule that such conspicuous place service during "normal working hours" would be insufficient under all circumstances. However, it is difficult to conceive of any circumstances, save one where the landlord has the foreknowledge referred to above, where such service can hereafter be sustained. ¶ Such a rule is both unnecessary and undesirable. As the Court of Appeals has said in a related context: "Indeed, in determining the question of whether due diligence has been exercised, no rigid rule could *properly* be prescribed." (*Barnes v City of New York*, 51 NY2d 906, 907; emphasis added.) So too, in determining whether "reasonable application" has been made before resort is had to conspicuous place service, no rigid rule excluding attempts during "normal working hours" can properly be prescribed. ¶ As the Appellate Term so aptly observed "in a society characterized by increasingly flexible work hours, substantial physical mobility, diverse living arrangements, and varied life styles, it is illogical to conclude that attempts to make personal or substituted service at a person's home which are undertaken during so-called normal working hours are, ipso facto, precluded from satisfying the RPAPL section 735 'reasonable application' standard." ¶ Moreover the case at bar presents a factually inappropriate predicate for the enunciation of such a rule. I would affirm the order of the Appellate Term. [120 Misc 2d 458.]