OPINION OF THE COURT
Renee A. White, J.
The respondent, Diane Geandomenico, has moved this court to vacate a judgment against her and to restore her to possession of the premises known as apartment 4R at 110 West 30th Street, New York, New York. Following an inquest on a holdover petition, a final judgment of possession was rendered in favor of petitioner. Shortly after the warrant was executed, the premises were rented to a commercial tenant, Samir Mako who took possession of the premises. Mr. Mako was joined as a party to this proceeding.
FINDINGS OF FACT
Michael Lee is a partner in, and agent of, S.W.S. Realty Co., the owner of 110 West 30th Street, an interim multiple dwelling. On September 1, 1977, the respondent, Diane Geandomenico, leased apartment 4R for a term of five years. Subsequent to the expiration of the lease, she continued to hold the premises as a month-to-month tenant.
The holdover proceeding brought against the respondent, Diane Geandomenico, alleged that she violated a substantial obligation of the tenancy by “placing rubbish, garbage, and construction materials in the hallway by [her] apartment as *770 well as in the street in front of the building”. The respondent was not properly served. As a result she defaulted in the action and was subsequently evicted from the premises.
The day the marshal executed the warrant, the petitioner leased the premises to Samir Mako for a term of five years for the purpose of operating a handbag factory. Mako then proceeded to prepare the premises for occupancy; moved in machinery and hired employees. Respondent moved by order to show cause to vacate the default judgment and to be restored to possession. Samir Mako was joined as a party to the proceeding and further alteration of the premises was stayed.
The default is vacated and the holdover proceeding dismissed. Service of process was improper under the “reasonable application” standard enunciated in Eighth Assoc. v Hynes (102 AD2d 746 [1st Dept]), and Metropolitan Life Ins. Co. v Scharpf (124 Misc 2d 1096 [Civ Ct, NY County]).
Additionally, the court finds that the proceeding was fraudulently brought. Mr. Lee himself placed garbage in the respondent’s hallway and fabricated evidence in an effort to cause the eviction of Ms. Geandomenico from the premises. Since Ms. Geandomenico failed to appear because she had no notice of the proceeding, and a fraud was committed on the court, the default proceeding must be vacated pursuant to CPLR 5015, 317.
Thus, the judgment is vacated and the underlying holdover proceeding dismissed. Now it is necessary to determine if a wrongfully evicted tenant may be restored to possession after an innocent new tenant has taken possession of the premises. This power has not previously been exercised in any reported Civil Court decision.
RESTORATION OF POSSESSION TO OUSTED TENANT
A tenant wrongfully evicted may be restored to possession even after the execution of the warrant. (Golde Clothes Shop v Loew’s Buffalo Theatres, 236 NY 465 [1923]; Eighth Assoc. v Hynes, 102 AD2d 746 [1st Dept], supra; Iltit Assoc. v Sterner, 63 AD2d 600 [1st Dept 1978]; Third City Corp. v Lee, 41 AD2d 611 [1st Dept 1973]; 520 E. 81st St. Assoc. v Heineman, NYLJ, May 17, 1982, p 15, col 1 [App Term, 1st Dept]; Oppenheim v Spike, 107 Misc 2d 55 [App Term, 1st Dept 1980]; Central Brooklyn Urban Dev. Corp. v Copeland, 122 Misc 2d 726 [Civ Ct, Kings County 1984]; D.U. Fourth Realty Co. v Meredith, 119 Misc 2d 423 [Civ Ct, NY County 1983]; 7402 Bay Parkway Assoc. v Diamond, 116 Misc 2d 403 [Civ Ct, Kings County 1982]; Papp v Maffei, 64 Misc 2d 739 [Civ Ct, NY County 1970].)
*771 The case at bar is complicated by the fact that an innocent new tenant, a party to this proceeding, is in possession of the premises. Mr. Mako entered into a lease and commenced occupancy on July 7, 1984, for the purpose of operating a handbag factory in this mixed use interim multiple dwelling.
When both the ousted tenant and the new tenant in possession were both residential tenants, the court in D.U. Fourth Realty Co. v Meredith (119 Misc 2d 423 [Civ Ct, NY County 1983], supra), chose not to exercise its power to restore the wrongfully ousted tenant to possession. The ousted tenant was relegated to an action in damages for wrongful eviction.
In Golde Clothes Shop v Loew’s Buffalo Theatres (236 NY 465 [1923], supra) a landowner in possession under a warrant demolished the building on the site and erected a theatre. During that time, the previous tenant was contesting its ouster. The decision awarding possession to Loew’s was reversed and the ousted tenant demanded to be restored to the premises. The Court of Appeals awarded a determinate area to the tenant. Judge Cardozo, speaking for the court, stated that “[t]he plaintiff [the ousted tenant] shows itself to be the owner of a legal estate, and asks to be restored to * * * that which is its own * * * One does not lose what is one’s own because its utility would be greater if it were awarded to some one else.” (Golde Clothes Shop v Loew’s Buffalo Theatres, supra, at p 470.)
Here, as a result of a fraudulent and illegal eviction, Ms. Geandomenico has been ousted from the premises to which she is legally entitled. The fact that it would be more profitable to Mr. Lee and Mr. Mako to operate a factory does not divest Ms. Geandomenico of her legal right to possession.
Judge Cardozo continued, “We are told that the defendant rested upon an order of a court. The prop was insecure, and warning was not lacking of the danger of collapse. When the order was reversed and the proceeding dismissed, rights and duties were re-established, inter partes, as if no order had been made” (Golde Clothes Shop v Loew’s Buffalo Theatres, supra, at p 470).
When Mr. Lee participated in a scheme to illegally evict Ms. Geandomenico, he knew that his action could be attacked in an action brought by Ms. Geandomenico. He took the risk of reletting, and went ahead, subjecting himself to an action for damages by either Mr. Mako or Ms. Geandomenico. Mr.. Lee has implicated an innocent third party in his action. No matter what the court decides one innocent party will be out of possession.
*772 It is necessary to weigh the equities as between Ms. Geandomenico and Mr. Mako in order to determine who should be permitted to retain possession and who should be relegated to an action for damages. An important and overriding consideration is the difference in the tenancies. Ms. Geandomenico is a residential tenant who wishes to continue in possession of the premises to use as a home for herself and her son. Mr. Mako desires to use the premises as a small factory for the production of handbags. This court is not aware of any published opinions dealing with a similar situation.
The difficulty in- obtaining reasonable, affordable housing in New York City is legend. As a matter of fact, the building at issue is an “interim multiple dwelling.” It was as recently as 1982 when such premises were legally recognized. It was based on a legislative finding that a serious public emergency was created by “the increasing number of conversions of commercial and manufacturing loft buildings to residential use without compliance with * * * local laws [and] that as a consequence of the acute shortage of housing as found and declared in the emergency' tenant protection act of nineteen seventy-four the tenants in such buildings would suffer great hardship if forced to relocate” (Multiple Dwelling Law § 280).
Although the evidence showed that Ms. Geandomenico may not have been in continuous uninterrupted possession of the premises since 1977, she has always considered it her home. Her temporary absences were the result of disputes with Percy Wilson, the man who fathered her child, the man with whom she lived. Since Percy Wilson moved out, she has lived there full time. Ms. Geandomenico teaches cooking courses, and instructs cancer patients in macrobiotic cookery. She recently commenced work on the kitchen of the subject premises so that she would be able to teach from her home.
Since she was illegally evicted Ms. Geandomenico has been staying in a friend’s home. To require her to find a new home for herself and her son would be an extreme hardship, in view of the legislatively recognized “acute housing shortage.”
On the other hand, evicting Mr. Mako would cause a disruption to the business that he has just begun. Prior to signing the lease for the premises at issue, Mr. Mako worked in his brother’s handbag factory across the street. However, he could temporarily relocate at his brother’s site, while locating new space for his own business. Commercial space is available in New York. There have not been any emergency commercial rent-control laws for 21 years. And while Mr. Mako seeks such space his *773 home life would, for the most part, remain unaffected. He could contemplate his choices in the comfort of his home.
Ms. Geandomenico would not have a place to which she could retire as she contemplated a new home. Her life, her son’s life, and her work would be at a standstill while she searched for a new home. And, in view of the difficulty in locating appropriate housing accommodations, that “temporary” dislocation could stretch over an infinite number of hours, days, weeks, and months.
Additional legislative recognition of the differences between residential and commercial tenants can be found in the law. The enactment of RPAPL 753 (1) recognizes the shortage of housing in that in New York City a tenant may apply for a stay of a warrant for up to six months if certain requirements are met. Those requirements are a showing that (1) the application is made in good faith, and (2) the applicant cannot find suitable similar premises in the neighborhood, or that it would be a hardship if the stay were not granted. Although a commercial tenant may seek a stay through the general provisions of CCA 212 or CPLR 2201 (Eskandar Corp. v Velis, 110 Misc 2d 193 [App Term, 1st Dept 1981]), the provision for a stay under RPAPL 753 is inapplicable to a commercial tenant. “[T]he law generally affords residential tenants more protection than commercial tenants”. (Masovi Corp. v Wagner’s Tri-Boro Rest., NYLJ, Oct. 27, 1980, p 7, col 1 [App Term, 1st Dept].)
Ms. Geandomenico has been the legal tenant since 1977 and has been the actual tenant in residence during most of that time. Mr. Mako has been in possession for less than 21/2 months. And within three days of his occupancy there he was aware that his right to possession was being contested. Even if their equitable interests balanced out, Ms. Geandomenico would still have a better right to possession. “It is the general rule in equity that as between two conflicting equitable interests, other things being equal, the one that is prior in time is superior in right. As between equal equities, his whose equity is first in time is strongest in right. Thus, in a contest between equities or interests in property, the rule to be applied primarily is that, other things being equal, the interest which is shown to have been earlier in time is entitled to prevail over the other. The principle finds expression in the maxim ‘qui prior est tempore, potior est jure.’ ” (20 NY Jur, Equity, § 120.)
Thus, balancing acute shortage of residential housing, the length of Ms. Geandomenico’s possession of the premises and the hardships she will suffer if forced to find a new residence against *774 Mr. Mako’s inconvenience, a temporary business dislocation, the equities weigh in Ms. Geandomenico’s favor. Therefore, it is the opinion of this court that Ms. Geandomenico must be restored to possession within 10 days from the date of entry of this decision.