OPINION OF THE COURT
Diane A. Lebedeff, J.
Approximately 40 requests for default judgments have been presented in a series of nonpayment proceedings, in which two process servers swear to attempts to serve, pursuant to RPAPL 735, in high-rise buildings. One process server claimed *690 such attempts at an average rate of 1 per 3 minutes, and the other generally an average of 1 per 4 minutes.
After considering whether the claimed feats are reasonable or possible — and giving weight to the claim that these process servers have reported this pace of work for a significant portion of their reported workday — several questions come to mind, paraphrased as follows: Faster than a speeding bullet? More powerful than a locomotive? Able to leap tall buildings in a single bound?
This consideration does raise two important legal issues: first, whether the service as claimed could be considered a proper attempt to serve under the "reasonable application” standard of RPAPL 735 (1), and second, what treatment should be accorded reports of service attempts which appear to have occurred with an unlikely rapidity. These inquiries arise because it is one of the functions of this court, as it reviews applications for default judgments to "check affidavits of service, and identify patterns of fraud which may become apparent in the course of dealing with large numbers of proceedings” as was noted by the Appellate Term, First Department, in Central Park Gardens v Ramos (NYLJ, Apr. 9, 1984, at 12, col 6).
THE FACTS
The attempts to serve in these cases were performed with a piston-like perfect regularity at an astonishing speed. Thus, for example, part of one sequence commenced on the 27th floor; one minute later, on the 22nd floor; one minute later, on the 21st floor; two minutes later, on the 14th floor. The second attempts were in the same order with the same elapsed time between each attempt. The process server is Joe Duggins, license number 773930. Mr. Duggins was previously mentioned by Judge Edward Lehner in Leader House Assocs. v Reyes (NYLJ, Feb. 16, 1983, at 13, col 3 [Civ Ct, NY County]) as a process server who had failed to find tenants at home to receive process in an unduly large percentage of his services.
The second process server had a slightly longer average elapsed time, with more variation in the length of time between services. Throughout, the same time lapse uniformly occurred as one compared, first, the two attempts to serve the same tenant, and second, the times between one apartment and the next one at which there was an attempt to serve, although there is one erratic time series one day. The second *691 process server also twice seems to have reversed the use of a.m. and p.m. This process server is Howard Belfer, license number 778066.
Both process servers start service at 6:00 a.m. and work through the morning. Each also reports afternoon or evening activity.
"REASONABLE APPLICATION” UNDER RPAPL 735 (1)
Service of process in default situations has become subject to closer review following the 1984 holding of the Appellate Division, First Department, in Eight Assocs. v Hynes (102 AD2d 746, affd 65 NY2d 739 [1985]), that a single attempt to serve during normal working hours on a weekday was not sufficient "reasonable application” under RPAPL 735. Implementing that decision, trial courts have required where conspicuous place service is used that, on weekdays, one attempt be made during normal working hours, between 8:00 a.m. and 6:00 p.m., and a second in the morning hours between 6:00 a.m. and 8:00 a.m. or in the evening hours between 6:00 p.m. and 10:30 p.m. (See, Metropolitan Life Ins. Co. v Scharpf, 124 Misc 2d 1096 [Civ Ct, NY County 1984]; New York State Hous. Fin. v Fawcett, NYLJ, Dec. 19, 1984, at 10, col 6 [Civ Ct, NY County]; Hammer v Berke, NYLJ, Feb. 4, 1985, at 17, col 4 [Civ Ct, Queens County] [with the latter refusing special consideration of "two fare” zones]; see generally, as to two attempts, Brooklyn Hgts. Realty Co. v Gliwa, 92 AD2d 602 [2d Dept 1983]; Mountbatten Equities v Metheny, NYLJ, Apr. 27, 1983, at 13, col 3 [Civ Ct, NY County].) Under these standards, the one reported attempt to serve at 10:35 p.m. must be held to be improper.
While it is generally recognized that the "reasonable application” standard of RPAPL 735 (1) is less than the "due diligence” standard of CPLR 308 (4), there is no question that on each attempt to serve, a process server must signal his or her presence at a door and await a response. Where a process server rings a doorbell and waits several minutes before posting, service will be found proper. Arguments that more is required, such as use of a building’s intercom system, will be rejected, as it was by the Appellate Term, First Department, in Parkchester Apts. Co. v Hawkins (111 Misc 2d 896 [1981]). The court reiterated the statement that a process server " 'may ring once (or twice if so moved), and if such mild, lawful efforts come to naught, he may proceed with posting *692 and mailing’ ” (supra, at 897, quoting Coulston v JKL Founding Corp., NYLJ, Mar. 20, 1974, at 17, col 7, which was also quoted in Hospitality Enters. v Fuego Rest. Corp., NYLJ, June 5, 1980, at 11, col 4).
Where the process server does less, however, such as where process was posted on a door when the tenant was inside and not summoned by a ring or knock as in Lipman v Salsberg (107 Misc 2d 276, 278 [Civ Ct, NY County 1980]), service will be found to be improper. At a minimum, therefore, "reasonable application” requires a knock or a ring on a door, and waiting for a sufficient time to secure a response or determine there shall be no response. Further, if there is a response, the process server must ascertain whether the named respondent is absent before resorting to substituted service upon another. (Matter of Smith v Norton, 204 App Div 248, 249 [4th Dept 1922]; 71 St. Assocs. v Van Epps, NYLJ, Apr. 26, 1983, at 12, col 2 [Civ Ct, NY County].)
In short, service of process is not a slapdash affair. There is every reason that service should be done carefully in landlord-tenant residential summary proceedings. The law already allows a simpler mode of service for such cases. The petitioner has an actual residence address and is not under the burden faced by other civil litigants. And, above all, saving a few minutes or some effort in a residential context is contemptible for cutting a corner or two might increase by even one whit the chance of an individual or a family joining the pool of human misery of the homeless on our streets.
Assuming that the statement of the facts of attempted services in these cases are true, reflection leads to a conclusion that the process server spent the major portion of the elapsed time on stairs or elevators, going between one apartment and another. Indeed, the time periods between attempts to serve are so brief that very little time was available to wait for a response at a door.
Accordingly, the court views the affidavits on their face as deficient in satisfying the "reasonable application” standard.
IMPROBABLE RAPIDITY OF SERVICE
The second aspect of this case relates to the pace of the service itself and questioning the truth of the affidavits. Visualizing the work entailed, both process servers were able to race from one apartment to another without interruption or hesitation and maintain such speed starting at 6:00 a.m. and *693 during all portions of their workday. Either they have phenomenal strength and endurance or the times reported for their attempts to serve are less than accurate.
Further, the regularity of service is suspect. It is a rare event in this life that one could perform a series of events such as those involved here with identical elapsed times.
The possibility that the reported times of the attempts to serve are not accurate is not to be taken lightly. Accurate time records are required of process servers. Indeed, a process server may be disciplined for recording "palpably incorrect time entry” for service on logs and affidavits, even if the record does not support a view that the process server engaged in " 'sewer service’.” (See, Matter of Griffith v Aponte, 123 AD2d 260, 261 [1st Dept 1986].)
Further, improbable time entries are a primary indication of questionable process service practices, as reported in the comprehensive analysis of service problems in A Joint Investigative Report Into the Practice of Sewer Service in New York City, issued in April of 1986 by the New York State Attorney-General, the New York City Department of Investigation, and the New York City Department of Consumer Affairs. One close analysis of suspect process servers concluded that 95% of their claimed times of service were or bordered upon impossibility, often because the elapsed time was too short. (Id., at 11-16.) The authors were drawn to the phrase "Superman syndrome” when describing claims of three or more services at different locations at the same time. (Id., at 2.) That report substantiates that problems with service are likely to exist where the elapsed time between services appear to be too short.
Attorneys who represent petitioners should especially note the report’s observation that the "Superman syndrome” increases when the process server works for several process serving agencies, which are then unable to provide complete supervision. Current self-interest dictates scrutiny of the work of such process servers because an attorney may be subjected to intentional infliction of emotional distress claims if a non-client alleges that the attorney acted outside the scope of honorable employment. (Green v Fischbein Olivieri Rozenholc & Badillo, 119 AD2d 345, 350-351 [1st Dept 1986], citing Singer v Whitman & Ransom, 83 AD2d 862, 863 [2d Dept 1981], and Newburger, Loeb & Co. v Gross, 563 F2d 1057, 1080 [2d Cir], cert denied 434 US 1035 [1978].) Further, in the *694 future, an attorney may be held accountable if a nonlawyer’s misconduct is ratified. (See, Proposed Amendments to Lawyer’s Code of Professional Responsibility, 42 Record of Assn of Bar of City of NY, at 323, 330-331 [1987].)
The final questionable circumstance in these cases is the strong contrast between the complete lack of personal delivery with the surprisingly successful ability of an investigator in most of these cases to contact a tenant when performing nonmilitary investigations under 50 USC, Appendix § 520. This comparison has been addressed in the landlord-tenant context in S.P.S.G., Inc. v Collado (113 Misc 2d 167 [Civ Ct, NY County 1982]), New York City Hous. Auth. v Smithson (119 Misc 2d 721 [Civ Ct, NY County 1982]), Leader House Assocs. v Reyes (supra), and New York State Hous. Fin. v Fawcett (supra), and need not be elaborated here.
Based on the foregoing, the court finds that these affidavits of service are suspect and are not to be granted simple credence. The same conclusion is applicable to the two situations in which the nonmilitary investigator omitted the name of the person with whom she spoke, which would, in any event preclude the granting of a final judgment.
CONCLUSION
Taking these factors together, the court declines to issue final judgment on the applications before it. The petitioner is given leave, if it should so desire, to produce the process servers with their logs and other records, as well as the person who contacted the tenant to secure the information relevant to a nonmilitary investigation, for examination. In accord the procedure approved by the Appellate Term, First Department, in Presbyterian Hosp. v Thompson (NYLJ, Sept. 4, 1984, at 6, col 1), such hearing may be scheduled with notice to the respondents.
This decision constitutes the order of the court and shall also be applicable to other cases in this group, a list of which will be separately supplied to petitioner’s counsel.