*299 OPINION OF THE COURT
Gerald Lebovits, J.
This 2003 opinion is written to enforce the Legislature’s 1924 decision to streamline expensive, duplicative litigation by joining in one lawsuit and before one court summary proceedings for possession and rent. The court, which rides circuit between Richmond and Kings Counties, consolidates for explanation a Richmond County nonpayment proceeding and a Kings County holdover proceeding. Both cases raise a common issue: Whether a court must award a money judgment against a tenant who defaults after receiving a petition and notice of petition by substituted or duly diligent conspicuous-place service.
The issue in these two cases affects more than two cases and more than two counties. Every year across the state, landlords in countless summary proceedings are denied money judgments that should be granted. These landlords must forgo rent justly owed. Or they must begin plenary actions whose service requirements are less protective for tenants than they are in summary proceedings. And this assumes, following the tenants’ relocation, that the tenants can be found and served in a plenary action.
Denying money judgments after good service helps only tenants who intentionally default. Tenants who find themselves in serious arrears can avoid in-hand personal delivery and decline to appear in court. The unhappy event of eviction is then tempered by the reality that money owed might never be sought. That discourages tenants from appearing and renders the court impotent to do justice.
Granting money judgments after substituted or duly diligent conspicuous service improves service. To get money judgments, landlords will encourage process servers to effectuate better service than mere reasonable-application service. Better service will result in personal or substituted service more often than not. That will reduce the possibility that a process server will effect sewer service, lessen the chance that tenants will not answer or appear, and decrease the uncertainty that a judge who signs a default warrant will cause a tenant to be evicted without notice.
There is a disconnect, moreover, in which defaulting tenants are evicted for not paying the same rent that the courts refuse to award: “It is somewhat ironic that the standard for service of process for a possessory judgment is less stringent than that for a money judgment. The possessory judgment granted in a *300 summary eviction proceeding authorizes forcible eviction of the respondent from her/his home, a matter of far greater importance, in most instances, than the interest in avoiding a money judgment.” (Andrew Scherer, Residential Landlord-Tenant Law in New York § 15:12, at 15-7 [2003 ed] [Fern Fisher, View from the Bench].)
This peculiar result — which helps neither honest tenants or landlords nor a unified state court system — has its roots in a 1929 Fourth Department commercial nonpayment case, Matter of McDonald (225 App Div 403 [4th Dept 1929]). The McDonald Court, worried about nonresident commercial tenants, found that personal jurisdiction is only gained over a tenant served personally in hand or who has appeared in the proceedings. (See id. at 406-407.) In so finding, the McDonald Court acknowledged rejecting the plain language of a clearly written statute in favor of ascertaining for itself what the Legislature must have meant. (See id. at 405.) Since then, all the courts denying money judgments after substituted or duly diligent conspicuous service rely on McDonald. But McDonald never applied to noncommercial cases involving residents — like the two at bar and thousands like them. And McDonald no longer applies even to commercial cases involving nonresidents: The United States Supreme Court and the New York State Legislature have eviscerated McDonald’s constitutional and statutory underpinnings more times than this opinion has pages.
At one time — although this is debatable — McDonald might have represented good law and good policy. Today McDonald and its progeny represent the opposite.
Conspicuous service, or “nail and mail,” is effected when a process server “affrx[es] a copy of the notice and petition upon a conspicuous part of the property sought to be recovered or plac[es] a copy under the entrance door of such premises.” (RPAPL 735 [1].) In Dolan v Linnen, a Richmond County nonpayment proceeding, tenant defaulted because she failed to answer a petition and notice of petition served conspicuously on the process server’s fourth and duly diligent attempt at personal service. The warrant clerk prepared an order, which the court reviewed and signed, granting possession but not money.
After a tenant’s failure to answer a nonpayment petition, every New York City warrant clerk will present a Civil Court or Housing Part judge with a default order that provides for a money judgment only when the landlord effectuates in-hand *301 personal delivery of the petition and notice of petition. No clerk will give a judge an order for a money judgment when a tenant receives substituted or duly diligent conspicuous service. That policy, passed along through generations of warrant clerks, is codified in a memorandum possessed by many in the landlord-tenant bar dated June 26, 1990, entitled “Warrant Seminar Series: Number 4,” and in an undated memorandum entitled “Failure to Answer Procedure.”
Neither memorandum addresses whether money may be awarded when conspicuous service is duly diligent, except to cite Oppenheim v Spike (107 Misc 2d 55 [App Term, 1st Dept 1980, per curiam]). But Oppenheim noted that duly diligent conspicuous service entitles a landlord to a default money judgment. As Oppenheim explained, the only reason that Civil Court’s “money judgment for rent was a nullity” was that “[t]here is no indication that the process server had used due diligence before resorting to conspicuous service.” (Id. at 56 [italics in original].)
Oppenheim, from the Appellate Term, First Department, is strong if not binding authority on this Second Department trial court because neither the Second Department’s Appellate Term nor its Appellate Division has considered the issue. (See Stewart v Volkswagen of Am., 181 AD2d 4, 7 [2d Dept 1992, per curiam] [finding that Appellate Division decisions from other departments are binding if Appellate Division in trial court’s department has not spoken], revd on other grounds 81 NY2d 203 [1993].) But because Oppenheim is honored by its breach, this court cannot simply cite it and let it go at that. Nor can the court simply cite some other opinions that explain why duly diligent conspicuous service must lead to a default money judgment, and let it go at that. (See e.g. Shared Equities Co. v Merchant, NYLJ, Apr. 24, 2002, at 18, col 4 [Hous Part, Civ Ct, NY County, Wendt, J.]; Macerich Queens Ltd. Partnership v M.I.E. Hospitality, 192 Misc 2d 276, 278 [Civ Ct, Queens County 2002]; Ichikawa v Azzinaro, Civ Ct, Richmond County, Mar. 17, 1997, Straniere, J., L&T No. 53964/96; Fleming v Flanagan, 178 Misc 2d 723, 727 [Just Ct, Town of Ramapo 1998].)
Both memorandums also prohibit money judgments when the petition and notice of petition were served by “leave and mail,” or substituted service, which consists of a process server’s delivering the petition and notice of petition to “a person of suitable age and discretion who resides or is employed at the property sought to be recovered.” (RPAPL 735 [1].) For *302 that prohibition the memorandums cite no authorities urging a different result — though several authorities urge that money be awarded following substituted service. (See e.g. Macerich Queens, 192 Misc 2d at 278; Touhamy v Geraldo, 187 Misc 2d 550, 552-554 [Nassau Dist Ct 2001]; Berman v Vargas, Hous Part, Civ Ct, Richmond County, July 13, 2000, Bedford, J., L&T No. 506688/00, slip op at 2.)
Rather, the memorandums cite only Matter of Seagram & Sons v Rossi (45 Misc 2d 427 [Civ Ct, NY County 1965], affd on other grounds 18 NY2d 725 [1966]) scad. Fairhaven Apts. No. 6 v Dolan (72 Misc 2d 590 [Suffolk Dist Ct 1972]).
Seagram, which allowed a money judgment only for duly diligent substituted service (45 Misc 2d at 428), is no longer good law. It was decided before CPLR 308 was amended in 1970 to abolish the requirement that substituted service be permitted only after due diligence was exercised to effect in-hand personal delivery. (See CPLR 308 [2].) Since 1970, substituted and in-hand personal delivery have been full equivalents; both are personal service. And Fairhaven Apts. No. 6 offers only an oblique defense to denying default money judgments. After the court found — as this court finds — that substituted service under the current CPLR 308 (2) and RPAPL 735 (1) “confers personal jurisdiction” (72 Misc 2d at 591), the court declined to award money — but in part only because the notice of petition did not contain a court-required notice giving the tenant 30 days to answer and primarily because the return date on the notice of petition was one day short of complying with CPLR 308 (2). (Id. at 592.)
The marshal never executed the warrant of eviction against the Richmond County tenant. She found a new home, without paying what landlord claimed was due. After a process server served her at her new home, landlord moved for a money judgment under RPAPL 732 (3). The issue now is whether landlord was entitled to a money judgment all along — whether the court should have granted a money judgment on default after tenant failed to answer the nonpayment petition. The court answers in the affirmative. When conspicuous service conforms to the due diligence standard of CPLR 308 (4) and RPAPL 735 (1), as it did here, a landlord need not bring separate proceedings for possession and money. The court therefore awards a money judgment for the rent, but only the rent, demanded in the petition: $1,513.20.
In Maxean v Kirton, a Kings County holdover proceeding, tenant failed to appear to answer a petition and notice of peti *303 tion served at tenant’s home on a person of suitable age and discretion. This court held an inquest. In sustaining the inquest and awarding a final judgment of possession, the court also awarded a money judgment for use and occupancy, but only use and occupancy, as demanded in the petition and extended through the date of the inquest: $6,300. Tenant later filed an order to show cause requesting more time to vacate. The court need not decide whether that appearance conferred personal jurisdiction sufficient to award a money judgment. (See CPLR 320 [b] [providing that appearance equals personal service of summons unless defendant objects to jurisdiction]; compare Schwartz v Power Conversion, 115 Misc 2d 217, 218-219 [Mount Vernon City Ct 1982], with 16 Lincoln Sq. Assoc. v Amrep Corp., 129 Misc 2d 697, 698-699 [Civ Ct, NY County 1985].) This opinion explains why the court awarded a money judgment at the inquest, which preceded the order to show cause. In essence, when substituted service conforms to CPLR 308 (2) and RPAPL 735 (1), as it did here, a landlord need not bring separate proceedings for possession and use and occupancy.

Dolan v Linnen

In this Richmond County nonpayment proceeding, landlord claimed that tenant owed him three months’ rent at $504.40 a month for her rent-stabilized apartment. A licensed process server averred in her March 13, 2002 affidavit of service, which is prima facie, presumptive proof that tenant was properly served (e.g. Bank of Am. Natl. Trust & Sav. Assn. v Herrick, 233 AD2d 351, 351 [2d Dept 1996, mem]), that she attempted four times to serve tenant personally with a five-day rent demand for not paying rent: on March 6, 2002 at 8:00 p.m., on March 8, 2002 at 6:45 a.m., on March 9, 2002 at 9:30 a.m., and on March 12, 2002 at 2:20 p.m. After these attempts, she served the demand conspicuously on March 12, 2002 at 2:20 p.m. On March 13, 2002, she sent tenant copies of the demand by USPS (United States Postal Service) first class and by certified mail. RPAPL 711 (2) requires a landlord to provide only three days for a tenant to cure, if a demand for outstanding rent is made in writing, before commencing a summary proceeding. Landlord gave tenant two extra days. 8
Following tenant’s disregard of landlord’s written demand for the outstanding rent, another licensed process server, according to her affidavit of March 25, 2002, tried four times to serve the petition and notice of petition personally on tenant at her home: on March 20, 2002 at 8:20 p.m., on March 21, 2002 *304 at 6:14 a.m., on March 21, 2002 at 6:30 p.m., and on March 22, 2002 at 10:30 a.m.
After these unsuccessful attempts, the server effected conspicuous-place service on March 22, 2002 at 10:30 a.m., by affixing the petition and notice of petition to tenant’s door. Physical service was finished when the server mailed two copies of the petition and notice of petition to tenant on Saturday, March 23, 2002. Under RPAPL 735 (1), the first copy was sent by USPS first-class mail, the second by USPS certified mail. Because landlord used conspicuous service, service was completed, under RPAPL 735 (2) (b), when the server filed proof of service — the affidavit of service — with the court within three days of the mailing. The court clerk then sent tenant a postcard by first-class mail to tell her that the proceeding had begun. (See RPAPL 732 [2]; 22 NYCRR 208.42 [i] [1], [2].) The postcard was not returned.
Tenant never answered. On April 10, 2002, the warrant clerk gave this court an order for a default judgment of possession, but not a money judgment, in landlord’s favor. After reviewing the file, the court signed the order, entered a possessory judgment, and issued a warrant of eviction to the marshal.

Maxean v Kirton

In this Kangs County holdover proceeding, a licensed process server served landlord’s 30-day termination notice. (See Real Property Law § 232-a.) According to his June 8, 2002 affidavit, he served “Jane Doe,” “a person of suitable age and discretion” who refused to give her name, at tenant’s home at 5:19 p.m. on June 7, 2002, because Doe was willing to “receive same on behalf of all respondents and * * * resides at said property.” The affidavit describes Doe, about 30 years old, with specificity. The next day, June 8, 2002, the server mailed copies of the 30-day notice to tenant by USPS first-class mail and by certified mail. Landlord’s termination notice told tenant that her month-to-month tenancy, established orally, was terminated and that tenant’s right to possess the one-family home would expire on July 8, 2002.
July 8 came and went, and landlord began a holdover proceeding. According to his August 13, 2002 affidavit of service, the same process server who served the termination notice served the petition and notice of petition under RPAPL 735 (1) at 11:29 a.m. on August 12, 2002 at the tenant’s home *305 on “John Roe,” “a person of suitable age and discretion” who refused to give his name but was willing to “receive same on behalf of all respondents and * * * resides at said property.” The affidavit describes Roe, about 30 years old, with specificity. The next day, August 13, 2002, the server mailed the petition and notice of petition to tenant by USPS first-class mail and by certified mail. The court clerk then sent tenant a postcard by first-class mail to tell her that the proceeding had begun. The postcard was not returned.
The notice of petition informed tenant that a hearing would be held on August 20, 2002, in Part E, room 509, at 2:00 p.m. The petition listed $5,600 as the outstanding use and occupancy from January 2002.
Tenant did not appear on August 20. The proceeding was adjourned at 3:35 p.m. to September 9, 2002, at 9:30 a.m., for an inquest. The clerk mailed tenant a postcard to tell her about the adjournment. On September 9, landlord appeared but tenant did not. The judge referred the matter to the expediter, who referred the matter to this court for an inquest, which was held at 3:46 p.m. The court sustained the inquest, awarded landlord a final judgment of possession, ordered the issuance of the warrant forthwith, and stayed the warrant’s execution for 10 days. The court examined the court papers, including the affidavits of service. Because the petition and the notice of petition were served by personal service on a person of suitable age and discretion at tenant’s home, the court, after hearing testimony on whether tenant paid use and occupancy, awarded a money judgment for seven months’ unpaid use and occupancy — $6,300, from January through September 2002, at $700 a month.
Tenant neither paid the use and occupancy nor vacated. On November 15, 2002, having received the marshal’s eviction notice, she filed an order to show cause containing a motion to vacate the inquest. In her supporting affidavit, she wrote only “I need more time.” She offered no excuse for her nonappearances or a defense to the holdover, and she did not explain why she had not paid use and occupancy for nine months or whether she might ever have the ability to pay. A Civil Court judge signed the order and stayed the warrant’s execution to December 2, 2002, the return date. Landlord appeared on December 2; tenant did not. This court therefore denied her motion and vacated all stays.
*306 Do Substituted and Duly Diligent Conspicuous Service Grant Personal Jurisdiction to Support a Money Judgment in a Summary Proceeding?
The combined question in both cases is whether substituted or duly diligent conspicuous service in a RPAPL article 7 nonpayment or holdover proceeding confers personal jurisdiction for a court to grant a money judgment when the respondent fails to appear.
This question arises for two reasons. The first is the view, enunciated in 1926 and 1929, that personal jurisdiction is only gained over a tenant served personally or who has appeared in the proceedings. (See Brambir v Seifert, 127 Misc 603, 603 [App Term, 1st Dept 1926, per curiam]; Matter of McDonald, 225 App Div at 403, 406-407 [4th Dept 1929].) The second is that the courts must jealously guard teiiants’ constitutional and statutory rights because summary proceedings derogate their common-law rights. (E.g. Matter of Flewwellin v Lent, 91 App Div 430, 432 [2d Dept 1904].)
In 1924, the New York Legislature merged actions for possession and arrears into a single summary proceeding to enhance judicial efficiency, promote the interests of justice, and dissuade landlords from resorting to self-help evictions. Despite the merger, courts since 1926 have split possession and money claims into summary proceedings for possession and plenary actions for arrears by denying default money judgments.
Opinions denying money judgments on a tenant’s default are based On one of the following grounds: (1) a lack of personal jurisdiction to support a money judgment; (2) the differences in personal, substituted, and conspicuous service between the RPAPL and the CPLR; (3) the differing time frames the RPAPL and CPLR give to answer a petition in a summary proceeding or a complaint in a civil action; (4) the legislative intent behind the creation of summary proceedings; and (5) an assumption that service methods other than in hand are insufficiently trustworthy to support default money judgments, despite their adequacy to support eviction.
All these reasons are flawed because they rely on the 1929 Fourth Department’s McDonald to hold that only in-hand personal delivery or a tenant’s appearance confers personal, as opposed to in rem, jurisdiction. (See e.g. Havemyer v Luttinger, 155 Misc 586, 586 [App Term, 1st Dept 1935, per curiam] [citing McDonald]; Witt-Stuart Realty Corp. v Mantell, 155 Misc *307 165, 167 [App Term, 1st Dept 1935] [same]; Eugenis v Felipe, NYLJ, Mar. 14, 2001, at 21, col 6 [Civ Ct, Kings County] [same]; Leven v Browne’s Bus. School, 71 Misc 2d 842, 842-843 [Nassau Dist Ct 1972] [same]; 1405 Realty Corp. v Napier, 68 Misc 2d 793, 795 [Civ Ct, Bronx County 1971] [same]; Wayside Homes v Upton, 40 Misc 2d 1087, 1088-1089 [Nassau Dist Ct 1963] [same]; Matter of Raymond v Grotz, 31 Misc 2d 925, 926 [Police Ct, Rockland County 1961] [same]; Matter of Wythe, 150 Misc 405, 407 [City Ct, Erie County 1933] [same]; Court Sq. Bldg. v Harris, 140 Misc 542, 544-545 [Mun Ct, NY County 1931] [same].)
One court that granted a default money judgment after duly diligent conspicuous service noted the bramble bush concerning jurisdiction by service in summary proceedings: “[C]onfusion has led some of the courts * * * to the ‘apparent rule’ that money judgments were not allowable in nonpersonal delivery cases.” (Fleming, 178 Mise 2d at 725.)
A learned opinion hewing to McDonald recently found that “[m]oney judgments upon default [in summary proceedings] should continue to be entered only upon a showing that the respondent was served by personal delivery.” (Ressa Family v Dorfman, 193 Misc 2d 315, 323 [Nassau Dist Ct 2002].) The Ressa court pronounced itself “constrained” to follow McDonald despite conceding that granting default money judgments is “more in accord with the governing statute” and is consistent with a “literal reading of the * * * statute,” and that “[w]ith the passage of time, and the disappearance of its original basis, the rule of McDonald was misstated. As in a game of ‘telephone,’ it became garbled and broadened.” (Id. at 316-318 [rejecting opinions relying on McDonald, including Eugenis, Fairhaven Apts. No. 6, Leven and 1405 Realty].) Notwithstanding all that, and without citing Oppenheim, Ressa concluded that post-McDonald judicial and statutory developments are irrelevant because, Ressa found, they have not expressly abrogated pre-McDonald legislative intent. (See id. at 322-323.)
This court disagrees with Ressa that McDonald has continuing vitality — a vitality Ressa itself undermined. McDonald stated that future courts should overrule it when the Legislature addresses McDonald’s concerns, and the Legislature has done so repeatedly. Additionally, the procedures extant when McDonald was decided bear little resemblance to today’s procedures, which include numerous safeguards to prevent and overcome sewer service. Moreover, McDonald was based on the *308 since-overruled Pennoyer v Neff doctrine (95 US 714 [1877]). And McDonald is inapposite to the residential landlord-tenant cases that rely on it. McDonald was a commercial nonpayment proceeding in which the Court was concerned about service when “the tenant was a non-resident.” (225 App Div at 405.) By definition, residential tenants are residents.
Under McDonald, landlords must begin plenary actions to recover rent, which “places landlords on the same footing as any other creditor with respect to money claims, allowing a debtor the [sic] up to 60 days’ notice they would be entitled to before default could be entered in a plenary action.” (Ressa Family, 193 Mise 2d at 322:) But placing landlords on the same footing as other creditors makes proceedings lengthy, not summary, and splits cases into separate lawsuits: summary proceedings for possession and plenary actions for arrears. That was the law before September 1, 1924, when the Legislature joined actions for possession and arrears into a single summary proceeding. (L 1924, ch 514, § 1.) It has not been the law since then.
To put Brambir and McDonald, decided on the cusp of the Great Depression, into the times and text of the then-controlling Civil Practice Act, consider that Civil Practice Act § 1422, “Duty of person to whom copy of precept is delivered,” contained the following, long absent from current law: “A person who willfully violates any provision of this section * * * if he is a tenant upon the property, forfeits to his landlord the value of three years’ rent of the premises occupied by him.” (L 1921, ch 199, § 1422.) That onerous penalty linked to service weighed on courts that examined service.
Brambir and McDonald can be understood only by understanding the historical development of jurisdiction and summary proceedings.
The Developments Leading to Brambir and McDonald
The history of summary proceedings reveals many changes since Brambir and McDonald. They also reveal the clear legislative intentions that McDonald sought before it believed that a court should award money on default. They further reveal that Brambir and McDonald are no longer viable.
Before 1820, a landlord’s sole legal option to dispossess tenants for nonpayment of rent was a slow, plenary ejectment action, now covered by RPAPL article 6, “Action To Recover Real Property.” To provide a quicker mechanism and deter self-help dispossessions, the Legislature enacted summary proceedings *309 in chapter 194 of the Laws of 1820 to give landlords a “simple, expeditious and inexpensive means of regaining possession of his premises in cases where the tenant refused upon demand to pay rent, or where he wrongfully held over without permission after the expiration of his term.” (Reich v Cochran, 201 NY 450, 454 [1911] [discussing history of summary proceedings]; accord Tik Sun Cheung v Xaio Man Li, 148 Misc 2d 55, 57-58 [Civ Ct, NY County 1989] [discussing history of summary proceedings]; Haskell v Surita, 109 Misc 2d 409, 410 [Civ Ct, NY County 1981]; Gardens Nursery School v Columbia Univ., 94 Misc 2d 376, 377 [Civ Ct, NY County 1978]; Maxwell v Simons, 77 Misc 2d 184, 186 [Civ Ct, Kings County 1973]; 2 Robert F. Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 29:5, at 402-404 [4th ed 1998] [outlining history of summary proceedings].)
Summary proceedings were originally limited to recovering possession in cases involving forcible entry, detainer, or a recognized landlord-tenant relationship. Claims for arrears required a separate plenary action. A summary proceeding for possession could establish whether rent was due and unpaid, but the courts had “no power to award judgment for the recovery of rent.” (Jarvis v Driggs, 69 NY 143, 147 [1877].) Personal jurisdiction was a nonissue because summary proceedings were strictly possessory and the necessary jurisdiction to regain possession was only in rem or quasi in rem.
Later amendments extended summary proceedings’ jurisdiction to holdovers, squatters, and others. In 1876 the Code of Civil Procedure codified summary proceedings, and in 1893 summary proceedings were amended to permit a tenant’s counterclaims. But no money judgment could be granted. (L 1893, ch. 705, § 1, amending Code Civ Pro § 2244.)
Summary proceedings then traveled en mass to article 83 (“Summary Proceedings To Recover Possession Of Real Property”) of the Civil Practice Act, which repealed and reenacted the Code of Civil Procedure in 1920. (L 1920, ch 925, art 83, § 1410 et seq.) The Civil Practice Act sections bearing on the cases before this court were adopted by Laws of 1921 (ch 199, § 15), specifically section 1421 — “Precept; how served” (previously Code Civ Pro § 2240); section 1424 — “Proof of service of precept” (previously Code Civ Pro § 2243); and section 1425— “Answer” (previously Code Civ Pro § 2244). The Civil Practice Act’s “precept” is RPAPL 735’s notice of petition.
Three years after Civil Practice Act §§ 1421, 1424 and 1425 were adopted in 1921, Laws of 1924 (ch 514, § 1, eff Sept. 1, *310 1924) amended Civil Practice Act § 1425 to join possession and rent in one proceeding. That joinder is reflected in section 1425’s postamendment title, which changed from “Answer” to “Answer. Judgment for rent due.” Section 1425 provided that “[i]f the precept contain a notice that demand is made in the petition for a judgment for rent in arrears, and the precept is served at least five days before the return day thereof, the court, upon rendering a final order, may determine the amount of rent due to the petitioner and give judgment for the amount found to be due.”
Both Civil Practice Act § 1425 and its predecessor Code of Civil Procedure § 2244 let tenants raise legal or equitable defenses or counterclaims: “Such defense or counterclaim may be set up and established in like manner as though the claim for rent in such proceeding was the subject of an action.”
Civil Practice Act § 1425 did not subject recovering arrears in summary proceedings to the same conditions, procedures, and requirements of a plenary action for rent, although some opinions have subscribed to an “action for rent” theory to deny money judgments. (E.g. 1405 Realty, 68 Misc 2d at 794 [holding that money judgment may be granted only if personal jurisdiction is acquired “as though the proceeding were an action for rent”]; Wayside Homes, 40 Misc 2d at 1088 [same]; Raymond, 31 Misc 2d at 926 [same].) Rather, Civil Practice Act § 1425 let tenants assert the same defenses and counterclaims they asserted in the previously separate plenary action for arrears. If summary proceeding service is made, according to the language of former Civil Practice Act § 1425, “as though the claim for rent in such proceeding was the subject of an action,” then CPLR 308 service would entitle a landlord to money. But the “action for rent” theory to deny money judgments arises only because of the misunderstood genesis of Code of Civil Procedure § 2244 and Civil Practice Act § 1425.
As the precursor to RPAPL 735, Civil Practice Act § 1421 (3), controlling conspicuous service, allowed the precept to be served, “[w]here service cannot with reasonable diligence be made as prescribed in either of the foregoing subdivisions of this section, by affixing a copy of the precept and petition upon a conspicuous part of the property.” (L 1924, ch 513.) Laws of 1924 added after the above sentence “and by depositing in a post-office another copy thereof, properly inclosed in a postpaid wrapper addressed to him at his place of residence, or upon proof by affidavit that no such residence can be found, service may be made in such manner as the court may direct.” (Id.) *311 This addition of mailing notification after affixment created New York’s modern “nail and mail” conspicuous service and aided tenants with an additional notification safeguard.
Brambir was decided at this stage. The opinion is brevity itself: “We cannot assume that the 1924 amendment of section 1425 of the Civil Practice Act (added by Laws of 1921, chap. 199, as amd. by Laws of 1924, chap. 514), providing for judgment for rent, was intended, contrary to well-established principles, to warrant the entry of judgment for rent against a tenant not personally served with the precept or who had not appeared in the proceeding. Order affirmed, with ten dollars costs.” (127 Misc at 603.) Likely, the Brambir court’s “well-established principles” were those in the then-controlling Pennoyer.
After Brambir, the Legislature amended Civil Practice Act § 1421 in 1927 to clarify where the notification portion of conspicuous service should be mailed. (L 1927, ch 593, § 2.) Section 1421 had directed the mailing only to the tenant’s “place of residence.” As amended, section 1421 (3) allowed mailing to the “last known place of residence or his last known place of business, or if a corporation at its last known place of business within the state of New York.” Remaining intact was the requirement for reasonable diligence in attempting personal delivery or substituted service before using conspicuous service.
The 1929 Fourth Department in McDonald was more forthcoming than the Appellate Term in Brambir. McDonald relied on Brambir and Pennoyer to reverse County Court’s grant of a default money judgment. County Court below had affirmed City Court’s grant of a default money judgment in a commercial nonpayment proceeding begun by conspicuous-place service. (See Matter of McDonald v Hutter, 130 Misc 631 [Niagara County Ct 1927].) After quoting the portions of Civil Practice Act § 1425 providing for money judgments, County Court found that “[t]his amendment is framed in language so plain that an attempt to construe it is superfluous.” (Id. at 631. ) As the court wrote, “The purpose of this amendment is obvious. Before its passage the landlord would have had to bring a separate action to enforce payment of the rent. * * * The amendment does not limit the provision as to judgment to proceedings started by personal service of the precept.” (Id. at 632. )
In its review, the Fourth Department noted that respondent landlord “contends, as the County Court and City Court have held, that [Civil Practice Act] section 1425 is clear and permits *312 the recovery of a money judgment for rent in arrears, whether the precept with the requisite notice is serviced personally or is served in any of the other ways provided in the 2d [substituted service] and 3d subdivisions [conspicuous service] of section 1421 of the Civil Practice Act.” (See 225 App Div at 405.) The Court also “admitted that the language of the amendment of section 1425 is broad enough to permit the construction urged by the respondent.” (Id.) Indeed, Katzman v Engelhardt (125 Misc 168 [App Term, 1st Dept 1925]) noted in dictum the plain meaning of Civil Practice Act § 1425. The Katzman court denied a money judgment because the case began before the 1924 Civil Practice Act § 1425 amendment joined actions for possession and rent, but the court wrote that Civil Practice Act § 1425 “permits a judgment for rent in connection with the granting of a final order in summary proceedings, where a demand for such rent is afiirmatively made in the petition and notice thereof embodied within the precept.” (Id. at 170.) But McDonald veered from the first rule of statutory interpretation: Applying the plain meaning of a clearly written statute unless doing so leads to absurdity. (See e.g. Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 103 n 1 [1997].)
Instead, McDonald discarded plain meaning in favor of what it believed the Legislature intended: “[W]e must, however, if possible, discover the intention of the Legislature as shown by the language of the statute itself viewed in the light of other statutory provisions.” (225 App Div at 405.) Given McDonald’s resort to nebulous legislative intent at the expense of applying statutory text, one wonders whether McDonald would be decided the same way today, under legal process methods of interpreting statutes.
McDonald recognized that “[t]he purpose of the amendment of section 1425 of the Civil Practice Act * * * was to simplify the practice and combine in a single litigation the summary proceeding and the action for rent in arrears.” (225 App Div at 406.) But the court backed away from this goal because of Pennoyer and held that permitting a money judgment against a defendant not served in hand “would render [Civil Practice Act § 1425] unconstitutional when applied to cases in which the tenant was a non-resident.” (Id.)
The Court then recommended that the Legislature, despite its 1924 amendment to Civil Practice Act § 1425, “change the rule requiring personal service of the initiatory process or substituted service by order of the court, or voluntary appearance, for the recovery of a personal judgment, and that until *313 the Legislature has more clearly indicated a contrary intention, the summary proceeding, where a money judgment for rent in arrears can be granted, must be limited to one in which the precept has been personally served or the defendant has voluntarily appeared.” (Id. at 406-407.) In the years since McDonald, the Legislature has satisfied McDonald’s request for clearly articulated contrary intentions.
Legislation Since 1929 Prove Intentions Contrary to McDonald
The Legislature has responded to McDonald by adding significant safeguards that have modified service requirements for plenary actions and summary proceedings. The Legislature has provided increased notice to the litigants of proceedings’ commencement and progress; offered litigants opportunities to secure fair resolutions; and ensured due process under US Constitution, Fourteenth Amendment § 1 and NY Constitution, article I, § 6.
In repealing and reenacting in 1954 Civil Practice Act § 1421, RPAPL 735’s predecessor, the Legislature removed the requirement that “reasonable diligence” be exercised in attempting in-hand or substituted service before resorting to conspicuous service in a summary proceeding and replaced it with a “reasonable application” standard. (Civil Practice Act § 1421 [1927].) As of 1954, “reasonable application” became the standard to serve a person of “proper age and discretion” to accept substituted service. Alternately, if personal delivery was not possible and substituted service after “reasonable application” proved fruitless, conspicuous service could be used.
On September 1, 1963, the Legislature repealed the Civil Practice Act and enacted the Civil Practice Law and Rules. (CPLR 10001.) The overhaul moved sections from the Civil Practice Act that governed property and summary proceedings to the RPAPL, where article 7 now governs summary proceedings. (L 1962, ch 142.) The 1963 CPLR 308 controlled “Personal service upon a natural person” and made personal delivery the preferred service method. Both substituted service and conspicuous service could be used only when in-hand service could not be made “with due diligence.” (CPLR former 308 [1963].)
In 1963, RPAPL 735’s methods of service paralleled CPLR 308. Substituted and conspicuous service were considered inferior service, to be used only after in-hand personal delivery was unsuccessful. RPAPL former 735 provided that “[s]ervice *314 of the notice of petition and petition shall be made in the same manner as personal service of a summons in an action; except that if service cannot be made in such manner, it shall be made by delivering to and leaving personally with a person of proper age and discretion who resides or is employed at the property sought to be recovered * * (RPAPL former 735 [1963].)
The standard of “reasonable application” in attempting personal delivery before substituted or conspicuous service carried into RPAPL 735 from the 1954 modification to Civil Practice Act § 1421. A law student has used the RPAPL’s reduced standard since 1929 from “reasonable diligence” to “reasonable application” to argue that “denying the grant of default judgments (absent the appropriate service) has more validity today * * * than it did when the McDonald ruling was first issued * * (Vladimir Bass, Final Judgments: The Hesitance to Grant Money Judgments on Default, Finkelstein & Ferrara’s Landlord-Tenant Prac Rep 4, 14 [Oct. 2002].) That view disregards legislation demonstrating an intent contrary to McDonald, further shown by the amendments following RPAPL 735’s enactment in 1963.
Procedural Safeguards Prove Intentions Contrary to McDonald
Today’s safeguards provided tenants in summary proceedings include (1) the prepetition oral or written demand for rent (RPAPL 711 [2]), along with proof that the demand was made, or a termination or quit notice in a holdover (Real Property Law § 232-a); (2) the service of the petition and notice of petition (RPAPL 731, 735); (3) the clerk’s postcard notification after filing (RPAPL 732 [2]; 22 NYCRR 208.42 [i] [1], [2]); (4) the court’s discretionary stay of the warrant of eviction (RPAPL 732 [2], [3]); (5) the marshal’s 72-hour notice to tenant before executing the warrant of eviction, or six business days if the marshal serves the warrant other than personally, in which case a mailing is required as well (RPAPL 749 [2]; New York City Dept of Investigation, New York City Marshal’s Handbook of Regulations § 5.2, at 51-52 [1997]); (6) the court’s authority to vacate a warrant and judgment for good cause (RPAPL 749 [3]; Matter of Brusco v Braun, 84 NY2d 674, 682 [1994]); and (7) the court’s ability to “restore the tenant to possession even after the warrant has been executed.” (84 NY2d at 682.) These safeguards were added, or strengthened, post -McDonald.
A clear contrary indication to McDonald is RPAPL 735’s 1965 amendment, which changed personal service in summary *315 proceedings from providing that service be performed as in a plenary action to requiring RPAPL 735 service. (L 1965, ch 910, §§ 7-8.) The Legislature struck text that service shall be made “in the same manner as personal service of a summons in an action.” (L 1965, ch 910, § 7.) In its place, the first sentence of RPAPL 735 (1) reads: “Service of the notice of petition and petition shall be made by personally delivering them to the respondent; or by delivering to and leaving personally with a person of suitable age and discretion * * * if upon reasonable application admittance can be obtained.”
Other legislation since McDonald contradicts McDonald’s holding that only in-hand delivery confers personal jurisdiction sufficient to grant a money judgment. Laws of 1970 (ch 852, § 1) repealed and reenacted CPLR 308 (2) in which substituted service now equals in-hand delivery. No longer valid are the pre-1970 cases holding that an attempt at personal delivery, the then requisite of due diligence, must precede substituted service. (See e.g. 1405 Realty, 68 Misc 2d at 795; Seagram & Sons, 45 Misc 2d at 428; Wayside Homes, 40 Misc 2d at 1088.) Also unpersuasive are post-1970 cases that relied on pre-1970 cases while neglecting to note the legislative change to CPLR 308. (See e.g. Heredia v Contino, 79 Misc 2d 222, 223 [App Term, 2d Dept 1973, mem], citing 1405 Realty, Schwartz, 115 Misc 2d at 218, citing Wayside Homes.) As the Court of Appeals, citing another McDonald, has found, CPLR 308 (2) countermanded all pre-CPLR 308 (2) due diligence cases: “McDonald was decided before the enactment of CPLR 308 (2), which permits service to be made upon an individual by leaving a copy of the summons with a person other than the named defendant. Given this alternative, ‘any consideration of whether due diligence was or was not used in an effort to make delivery to [defendant] in person is irrelevant.’ ” (Macchia v Russo, 67 NY2d 592, 594 [1986, per curiam], citing McDonald v Ames Supply Co., 22 NY2d 111, 115 [1968], and quoting duPont, Glore Forgan & Co. v Chen, 41 NY2d 794, 797 [1977].)
This change to CPLR 308 (2) would render McDonald academic had the 1965 modification to RPAPL 735 not removed the text stating that service shall be made “in the same manner as personal service of a summons in an action.” (L 1965, ch 910, § 7.) But the dissonance with McDonald continues. Under either RPAPL 735 (1) or CPLR 308 (2), substituted service confers personal jurisdiction.
Moreover, the due diligence requirement in today’s CPLR 308 (4) means that personal delivery or substituted service *316 must be attempted before resorting to conspicuous service. The court acquires personal jurisdiction whenever substituted service is used in a plenary action or a summary proceeding. In summary proceedings, the process server need not show “reasonable application” in attempting personal delivery before effecting substituted service. (Eight Assoc. v Hynes, 102 AD2d 746, 748 [1st Dept 1984, mem], affd 65 NY2d 739 [1985]; 3 Dolan, supra, § 45:14, at 172-173; David D. Siegel, NY Prac § 575, at 951-952 [3d ed 1999].)
Further illustrating the Legislature’s intent to protect tenants, Laws of 1971 (ch 83) added to RPAPL 735 (1) the requirement of mailing a second copy of the petition and notice of petition by registered or certified mail if substituted or conspicuous service was used. Previously, only conspicuous service required that mailing. Now two copies of the petition and notice of petition must be mailed to the tenant — one by first-class mail, a second by certified or registered mail. (Id.) The mailing must take place within a day of the substituted or conspicuous service. (Id.; Matter of Rodelli v McArthur’s Inc., 243 AD2d 1040, 1041 [3d Dept 1997]; Columbus Prop. v ISKS Realty Corp., 163 Misc 2d 446, 447 [Civ Ct, NY County 1994].) This second mailing is not found in CPLR 308, which requires only a first-class mailing of the summons and complaint when service is substituted or conspicuous.
A penalty arises for any failure to comply with RPAPL 735’s requirement to deliver or affix and mail in substituted and conspicuous service. When a statute requires multiple acts to effect and complete service, omitting any part requires dismissal even if notice is received. (E.g. Raschel v Rish, 69 NY2d 694, 697 [1986].)
The last step in serving process is filing proof of service. Within three days of serving a copy of the petition and notice of petition, the original notice of petition must be filed, with proof of service, with the court clerk. (RPAPL 735 [2].) The landlord must then give the clerk a stamped postcard, addressed to the tenant at the service location, which the clerk uses to notify the tenant, in English and Spanish, that a proceeding has begun. (22 NYCRR 208.42 [i] [1], [2].) The return address on the postcard must be the Housing Part in the county where the proceedings began, and “[n]o default judgment for failure to answer shall be entered unless there has been compliance with this rule.” (22 NYCRR 208.42 [i] [2].)
The tenant’s oral or written answer in a nonpayment proceeding triggers RPAPL 732 (2), which directs “the clerk *317 [to] fix a date for trial or hearing not less than three nor more than eight days” from the date the tenant answers the nonpayment petition. Tenants who responded orally are given an immediate written notice of the date, time, courthouse, and room (part) where they should appear. RPAPL 732 (2) directs the clerk to “immediately notify by mail the parties or their attorneys of such date.”
In the event of a default, RPAPL 732 (3) directs that “the judge shall render judgment in favor of the petitioner and may stay the issuance of the warrant for a period of not to exceed ten days from the date of service.” Notably, the statute does not command only a judgment of possession or exclude a judgment for money. Nor is there an opportunity for an inquest in a nonpayment proceeding. Judgment — and that presumes a money judgment in addition to a possessory judgment — must be awarded on default. (Brusco, 84 NY2d at 678.) Thus, in Ichikawa (Richmond County, L&T No. 53964/96, slip op, at 3), the court granted a default money judgment under RPAPL 732 (3) following duly diligent conspicuous service because, it held, Brusco compels a final judgment when a tenant defaults.
Once a final judgment is entered but before a warrant of eviction issues under RPAPL 749, both the court and the clerk review the warrant request and the supporting papers. Among things reviewed is the landlord’s affidavit of nonmilitary service, which affirms that the tenant is not in military service on active duty and that no occupants depend financially on a named tenant in the military. This affidavit protects tenants and the families of named tenants serving outside the state on active military duty. (War and National Defense Soldiers’ and Sailors’ Civil Relief Act of 1940, 50 USC Appendix § 521; see HR Rep No. 5111, 107th Cong, 2d Sess, To Restate, Clarify, and Revise the Soldiers’ and Sailors’ Civil Relief Act of 1940 [July 12, 2002].)
If the court finds a problem with the papers, the warrant may not issue. Once the warrant issues, the marshal must serve notice in writing of the pending eviction on the tenant, using the methods required for service of the notice of petition — personal-delivery, substituted, or conspicuous-place service — and a mailing if not served in hand. This notice must be served at least 72 hours before the eviction, or six business days with mailings. The time increased from 24 to 72 hours in 1966. (L 1966, ch 750, § 3.) And after all that, a tenant may file an order to show cause to request more time to satisfy the judgment or to vacate it altogether.
*318 Courts since McDonald have cited the evil of “sewer service” to deny default money judgments unless the tenant was served in hand. (See e.g. Ressa Family, 193 Misc 2d at 322, quoting Bruce M. Balter and Michael J. Simone, Reviewing Housing Court and Orderfs] to Show Cause, NYLJ, Oct. 11, 2000, at 1, col 1 [noting that some tenants ignore petitions because of sewer service]; see also Velazquez v Thompson, 321 F Supp 34, 40 [SD NY 1970] [“The true evil is not the state statutory procedure but its alleged flagrant abuse by the pernicious process server”], affd 451 F2d 202 [2d Cir 1971].)
Citing sewer service to deny only money suggests an unreasonable fear that tenants will be cheated into losing money but not something more precious — their homes. In any event, too many tenants appear in court to conclude that petitions are improperly served en mass, as they were in the era of Brambir and McDonald: “ ‘Civil Court statistics * * * completely dispel the common myth that “for the most part, Notices of Petition are ignored in summary proceedings.” Tenants answer petitions.’ ” (Warren A. Estis and William J. Robbins, Housing Court, Reappraising 15 Years of Positive Changes, NYLJ, Feb. 7, 2001, at 5, cols 2, 4; at 35, col 3 n 3 [alteration in Estis and Robbins], quoting Administrative Judge Fern Fisher, in turn quoting and refuting Balter and Simone.)
Sewer service was the reason the Legislature modified CPLR 308 (L 1970, ch 852, § 1) to make substituted service equal to in-hand delivery: “The purpose of CPLR 308(2) is to discourage ‘sewer service’ — the submission of a false affidavit of service — by giving process servers an alternative to the sometimes difficult task of making personal delivery to the defendant herself.” (Vincent Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C308:3, at 20 [2001].) As the Court of Appeals wrote in Feinstein v Bergner (48 NY2d 234, 239 [1979]), the Legislature made substituted service equal to personal delivery to end the “disreputable practice known as ‘sewer service.’ ” It hits the heart of illogic to deny a money judgment on the basis that substituted service encourages sewer service.
The court is mindful that “service of process is not a slapdash affair. There is every reason that service should be done carefully in landlord-tenant residential summary proceedings. * * * [Slaving a few minutes or some effort in a residential context is contemptible for cutting a corner or two might increase by even one whit the chance of an individual or a family joining the pool of human misery of the homeless on our *319 streets.” (1199 Hous. Corp. v Griffin, 136 Misc 2d 689, 692 [Civ Ct, NY County 1987].) But granting default money judgments will improve the reliability of service as process servers effect more than reasonable-application service. Thus, granting money judgments might lead to fewer evictions because tenants served well are more likely to appear in court to defend themselves than when they are served only by minimal two-attempt RPAPL conspicuous service. And granting default money judgments will bring relief to those to whom just debts are due, because “[p]erhaps the most fundamental right of an owner of real property is that of receiving the rents * * * for the use and occupation thereof.” (Matter of Wicking, 162 Misc 357, 360 [Sur Ct, Kings County 1937].)
McDonald’s Constitutional Underpinnings Have Evaporated
In adhering to McDonald, the Ressa court, conceding that Pennoyer no longer binds, found that “ [subsequent constitutional developments are irrelevant to an interpretation of legislative intent.” (Ressa Family, 193 Mise 2d at 321.) Arguing that legislative developments do not prove legislative intent, however, “ ‘would be to deny every quality of the law but its age, and to render it incapable of progress or improvement.’ ” (Burnham v Superior Ct., 495 US 604, 619 [1990], quoting Hurtado v California, 110 US 516, 529 [1884].)
Consistent with state sovereignty and to prevent abuses against nonresidents, Pennoyer held that only in-hand delivery confers personal jurisdiction to grant a money judgment. (See 95 US at 727-729, 733-734.) Pennoyer was the law from 1877 until International Shoe Co. v Washington (326 US 310, 316-317 [1945]) held that a nonresident need not be physically present within a state to be afforded due process. Under International Shoe, options to in-hand delivery like substituted or conspicuous service can establish personal jurisdiction over a nonappearing, defaulting defendant. (Id. at 316.) International Shoe set the due process test for personal jurisdiction: “certain minimum contacts * * * such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’” (Id. at 316, quoting Milliken v Meyer, 311 US 457, 463 [1940].) One hundred years after Pennoyer, the Court extended International Shoe’s minimum contacts test to actions in rem. (See Shaffer v Heitner, 433 US 186, 212 [1977].)
Under International Shoe and its progeny, courts may now invoke personal jurisdiction over litigants served other than in *320 hand if they are served by a method reasonably calculated to notify them. (Mennonite Bd. of Missions v Adams, 462 US 791, 796 n 3 [1983]; Greene v Lindsey, 456 US 444, 455 [1982]; Lancaster v Colonial Motor Frgt. Line, 177 AD2d 152, 157 [1st Dept 1992], lv dismissed 82 NY2d 920 [1994].)
The Legislature’s grant of jurisdiction in RPAPL 735 is constitutional. In Velazquez v Thompson (451 F2d 202 [2d Cir 1971]), the Second Circuit addressed constitutional challenges to RPAPL 735 under the Fourth and Ninth Amendments, as applied to the states through the Fourteenth Amendment’s Due Process Clause. The court cited Mullane v Central Hanover Bank & Trust Co. (339 US 306, 314 [1950]) and other considerations to determine that RPAPL 735 service satisfies due process. (See 451 F2d at 205; accord Bossuk v Steinberg, 58 NY2d 916, 918-919 [1983, mem] [describing Mullane as “hornbook law”].)
Granting default money judgments will occasionally lead to erroneous money judgments, just like mistakes are made on defaults in plenary actions. Before prejudice arises, however, the mistake can be rectified, whether the tenant is in or out of possession, by an order to show cause or motion to vacate the money judgment on a showing of an excusable default and a meritorious defense. But in constitutional terms, the reasoning in McDonald and its progeny that substituted and conspicuous service do not meet due process has been invalid for 58 years. That is why most scholars agree that money judgments must be awarded after such service.
Most Scholars Believe That Substituted and Duly Diligent Conspicuous Service Should Lead to Default Money Judgments
Changes to underlying statutes should affect opinions relying on the statutes because “ ‘when the reason for the rule ceases, the rule [also] ceases.’ ” (Crimmins Contr. Co. v City of New York, 138 AD2d 138, 144 [1st Dept 1988], affd 74 NY2d 166 [1989], quoting Arthur Linton Corbin, Contracts § 652, at 790-791 [Colin K. Kaufman, 1984 Supp]; accord Funk v United States, 290 US 371, 385 [1933]; Marshall v Moseley, 21 NY 280, 292 [I860]; Oliver Wendell Holmes, The Path of Law, 10 Harv L Rev 457, 469 [1897], reprinted in 110 Harv L Rev 991, 1001 [1997].)
Although summary proceedings have changed since 1929, McDonald continues to run decisions aground on its sandbar. Moreover, although Laws of 1954 (ch 529, § 1) added the rea *321 sonable application standard governing service of process to Civil Practice Act § 1421, the predecessor of today’s RPAPL 735, McDonald plies the waters like a ghost ship. Leading New York commentators have therefore turned to the CPLR to dislodge summary proceedings from McDonald’s shoals to advocate for the result most faithful to the Legislature’s intent in joining proceedings for possession and arrears.
Faced with McDonald, these commentators analyze the different standards of RPAPL 735 and CPLR 308 service. They conclude, as this court does, that no constitutional, statutory, or practical reason prevents duly diligent plenary action CPLR 308 (4) conspicuous service from conferring personal jurisdiction in RPAPL summary proceedings. For the most part they also conclude that substituted service requires a money judgment as well.
Treiman and Feder articulate McDonald’s entrenched orthodoxy: “Basic black-letter law for the landlord-tenant practitioner is that a landlord may not obtain a money judgment on default in a summary proceeding unless he effected personal service or the tenant appeared.” (David M. [now Dov Hellbrueck] Treiman and Craig S. Feder, Default Money Judgments In Summary Proceedings, NYLJ, July 30, 1985, at 1, col 3.) But, they explain, “[t]he policy underlying this rule has in recent years evaporated,” and McDonald has “increased the oppression of impoverished tenants by increasing the real cost of low income housing.” (Id.)
Andrew Scherer, the Executive Director of Legal Services for New York City, notes that “[i]f the tenant defaults in a nonpayment proceeding by failing to appear at all, the petitioner may have only a possessory judgment and not a judgment for rent due unless the respondent was personally served with process, or served in compliance with the CPLR ‘due diligence’ standard, in which case the petitioner can get a money judgment as well.” (Scherer, supra, § 15:11, at 15-6, 15-7.) Professor Scherer includes substituted service in his phrase “personally served.” In amending CPLR 308 in 1970, the Legislature made both personal delivery and substituted service “personal service.” (L 1970, ch 852, § 1; cf. Callen v De Koninck, 23 AD2d 757, 757 [2d Dept 1965, mem] [holding, pre-CPLR 308 (2) amendment, that default money judgments are proper when court order permits substituted service on tenant evading service].)
Professor Scherer elaborates: “[T]o obtain a money judgment upon an initial tenant default in appearing where nonpersonal *322 service was used, a petitioner must satisfy the more stringent requirement of ‘due diligence’ contained in CPLR 308.” (Scherer, supra, § 15:12, at 15-7.) In his view, a trial court must grant “[a] money judgment [if] the process server * * * used ‘due diligence’ before resorting to conspicuous place service.” (Id.)
Professor Siegel similarly argues against McDonald’s prohibition:
“The RPAPL § 735 alternative of deliver-and-mail [substituted service] is today analogous to the deliver-and-mail method of CPLR 308(2), which gives personal jurisdiction in an action without any need to show a prior effort at personal delivery under CPLR 308(1). Insofar as mechanics alone are involved, therefore, a deliver-plus-mail service under RPAPL § 735 should also support a rent judgment.” (Siegel, NY Prac § 575, at 952.)
“[A]n affix-and-mail [conspicuous] service under RPAPL § 735 apparently would not [confer personal jurisdiction], however, unless it is demonstrated that the other methods proved unavailing despite diligent effort. It would be the analogue of CPLR 308(4) [conspicuous service], which does not offer personal jurisdiction unless diligence is shown in attempting previously listed methods.” (Id. at 952 n 15.)
Judge Dolan’s Rasch mostly concurs: “[B]efore a landlord can be entitled to a money judgment, it must be established that the petition and notice of petition were served personally; or that substituted or conspicuous place service was resorted to only after due and diligent efforts to serve it personally met with failure; or that the tenant appeared voluntarily.” (3 Dolan, supra, § 45:14, at 172.) Although Judge Dolan believes that duly diligent conspicuous service allows a money judgment, he writes that substituted service may be used only after due diligence is exercised in attempting in-hand delivery. On this last point, respectfully, he errs. Since CPLR 308’s 1970 amendment, substituted service confers personal jurisdiction. (See e.g. Eugenis, NYLJ, Mar. 14, 2001, at 21, col 6 [noting that Judge Dolan’s “Rasch is technically incorrect”]; Touhamy, 187 Mise 2d at 552-554 [finding that court has personal jurisdiction to award money after substituted service without due diligence in attempting personal delivery]; Berman, Richmond County, L&T No. 506688/00, slip op, at 2 [same].)
Last, Richmond County Justice Ponterio wrote while serving as a Civil Court judge handling Staten Island’s landlord-tenant *323 docket that “[i]f a money judgment is sought, service must be made pursuant to CPLR 308. In this regard, a summary proceeding is no different from a plenary action. On the other hand if only a possessory judgment is sought, service may be made pursuant to RPAPL 735.” (Frank V. Ponterio, From the Bench, Richmond County B J 4, 4 [Holiday Issue 1990].)
These scholars conclude that CPLR 308 and RPAPL 735 meld to require default money judgments. They cannot all be wrong and be all wrong.
Melding CPLR 308’s “Due Diligence” with RPAPL 735’s “Reasonable Application”
Melding the CPLR with the RPAPL in attempting personal delivery before conspicuous service has critics: “nowhere has it been suggested by the Legislature that CPLR 308 should somehow be incorporated into RPAPL 735. * * * The attempted amalgamation of CPLR 308 and RPAPL 735 is necessary solely due to the misunderstanding of the rule of McDonald.” (Ressa Family, 193 Misc 2d at 320.) One student even argued that any melding “impose[s] a double-standard in obtaining in personam jurisdiction [and] incorporate [s] ‘into our law a novel practice’ that would run contrary to ‘a long-established uniformity’” (Bass, supra at 14 [emphasis in original], quoting McDonald, 225 App Div at 406), although Ressa itself noted that “the utilization of alternative means of service to personal delivery is no longer ‘novel’ or a break with ‘uniformity.’ ” (Ressa Family, 193 Misc 2d at 321.)
Despite the criticism of using service under the heightened due diligence standard from CPLR 308 (4) in RPAPL-governed summary proceedings, legislative intent, maxims of statutory interpretation, and CPLR 103 (b) and 403 (c) compel amalgamation. RPAPL 735 sets out the manner to serve the petition and notice of petition for summary proceedings, but CPLR 403 (c) permits CPLR 308 methods of service to be used in addition to RPAPL 735 methods of service. According to CPLR 403 (c), “A notice of petition shall be served in the same manner as a summons in an action.” Thus, if a process server resorts to conspicuous service in a summary proceeding after being duly diligent in attempting personal service — either in hand or substituted — then conspicuous service confers in personam jurisdiction over the defaulting tenant and allows the landlord to receive a money judgment. (Oppenheim v Spike, 107 Misc 2d at 56; Scherer, supra, § 15:12, at 15-7.)
Similarly, CPLR 103 (b) (L 1962, ch 308, § 1, eff Sept. 1, 1963) provides that “[e]xcept where otherwise prescribed by *324 law, procedure in special proceedings shall be the same as in actions, and the provisions of the civil practice law and rules applicable to actions shall be applicable to special proceedings.” The CPLR Advisory Committee Notes for CPLR 103 (b) explain that “under subd (b) the new CPLR is generally applicable in special proceedings except to the extent that procedure is otherwise provided for.” CPLR 105, “Definitions,” provides in subdivision (b) that “[t]he word ‘action’ includes a special proceeding * * And a summary proceeding is a special proceeding. (RPAPL 701; Clarke v Wallace Oil Co., 284 AD2d 492, 493 [2d Dept 2001, mem]; MSG Pomp Corp. v Doe, 185 AD2d 798, 799 [1st Dept 1992, mem].)
Melding CPLR 308 with RPAPL 735 protects tenants. While CPLR 308 (4) adds due diligence, RPAPL 735 (1) adds a certified or registered mailing requirement and restricts service to “the property sought to be recovered,” as opposed to CPLR 308 (4), which allows affixment elsewhere. Combined, CPLR 308 and RPAPL 735 protect tenants better than either alone. Personal jurisdiction is therefore obtained when the affixing comports with RPAPL 735’s location requirement and when a landlord shows due diligence in attempting personal delivery or substituted service before resorting to conspicuous service.
What Constitutes Due Diligence to Award Money?
CPLR 308’s due diligence standard in attempting to effect in-hand or substituted service before effecting conspicuous service contrasts with RPAPL 735’s lower reasonable application standard. Under RPAPL 735, although “the effort the process server must make is less than that required under CPLR 308 (subd 4) (‘due diligence’), the effort must have some expectation of success. * * * The attempt must be made at a time when the process server could reasonably expect someone to be home.” (Brooklyn Hgts. Realty Co. v Gliwa, 92 AD2d 602, 602 [2d Dept 1983, mem], citing Parkchester Apts. Co. v Hawkins, 111 Misc 2d 896, 897 [App Term, 1st Dept 1981, per curiam].) One attempt at in-hand or substituted service must be made during working hours, between 8:00 a.m. and 6:00 p.m., and a second in the morning between 6:00 and 8:00 a.m. or in the evening between 6:00 and 10:30 p.m. (1199 Hous., 136 Misc 2d at 691.)
No brightline test elevates conspicuous service that confers in rem jurisdiction under RPAPL 735’s reasonable application standard over duly diligent conspicuous service that confers personal jurisdiction: “[I]n determining the question of whether *325 due diligence has been exercised, no rigid rule could properly be prescribed.” (Barnes v City of New York, 51 NY2d 906, 907 [1980, mem].) The most common factor separating reasonable ' application from due diligence, however, is the number of attempts at in-hand or substituted service.
Two responsible attempts at in-hand or substituted service before resorting to conspicuous service satisfy reasonable application but not due diligence. (E.g. Lama Holding Co. v Linden, 184 AD2d 314, 314 [1st Dept 1992, mem].) Only three or more responsible attempts suffice to award money on default. (See e.g. Johnson v Waters, 291 AD2d 481, 481 [2d Dept 2002, mem] [“(T)hree attempts to make service of the summons and complaint upon the defendant at his residence at different times and on different days * * * were sufficient to constitute due diligence”]; Ichikawa, Richmond County, L&T No. 53964/96 [awarding default money judgment on conspicuous service on fourth attempt at in-hand service]; Shared Equities, NYLJ, Apr. 24, 2002, at 18, col 4 [“(T)hree attempts at personal delivery must be made before conspicuous service is resorted to”; then money must be awarded on default]; Fleming, 178 Misc 2d at 727 [granting default money judgment on third in-hand service attempt].)
In Dolan, the nonpayment proceeding, the process server attempted four times to deliver the petition and notice of petition personally before she turned to conspicuous service. She responsibly attempted to serve the papers at such times and on different days that due diligence is satisfied. Landlord is therefore entitled to a money judgment, despite the differing time periods in plenary actions and summary proceedings for tenants to answer.
The Different Answering Periods in the CPLR and RPAPL are Irrelevant
CPLR 308 and 320 and RPAPL 732 (nonpayments) and 743 (holdovers) give tenants time to answer a complaint or a petition. CPLR 308 (2) requires filing proof of service within 20 days of mailing the summons and complaint. Service is complete for substituted or conspicuous service 10 days after filing, which starts the time to answer. Under RPAPL 732 (1), “[t]he notice of petition shall be returnable before the clerk, and shall be made returnable within five days after its service [completion].” RPAPL 732 (2) provides that “[i]f the respondent answers, the clerk shall fix a date for trial or hearing not less than three nor more than eight days after joinder of issue *326 * * Given these differences, some opine that the time to answer in summary proceedings is too short for a default to result in a money judgment. (See e.g. Eugenis, NYLJ, Mar. 14, 2001, at 21, col 6; Fairhaven Apts. No. 6, 72 Misc 2d at 592; Bass, supra at 11-14.)
Although CPLR and RPAPL time-to-answer differences are relevant when a tenant answers, they are irrelevant when a tenant does not. Under RPAPL 732 (3), if a tenant fails to answer a nonpayment petition within five days of service, the judge may not stay the issuance of the warrant for more than 10 days from the date of service. Moreover, the RPAPL’s shorter answering time frame has no effect on whether a court’s jurisdiction is personal or only in rem. Accordingly, a court should award money on default regardless. (E.g. Macerich Queens, 192 Misc 2d at 278.) As one court explained, rules setting out the “time to answer or appear * * * do not provide for the method of service of process and do not affect the validity of service. Thus, they do not relate to jurisdiction.” (Plaza 400 Owners Corp. v Resnicoff, 168 Misc 2d 837, 841-842 [Civ Ct, NY County 1996].)
This court therefore agrees with Professor Siegel that default money judgments should be granted on melding CPLR 308 with RPAPL 735 because time-to-answer
“distinctions are unwarranted. Nothing prevents the legislature from stipulating a shorter notice period for rent in a summary proceeding than it requires for a money claim in an action, as long as each procedure satisfies due process. The legislature has expressly authorized a rent judgment in a summary proceeding, as well as the awarding of repossession, and has drawn the service requirements in RPAPL § 735 without distinguishing between them based on method of service.” (Siegel, supra, § 575, at 953 [nn omitted], cited in Berman, Richmond County, L&T No. 506688/00, slip op, at 2 [discounting time frame distinction].)
The compressed time frame between the time to answer and the possibility of default has been a fixture of landlord-tenant law since summary proceedings began in 1820.
Conclusion
Recovering arrears is important in both nonpayment and holdover proceedings. Landlords face recurring fixed costs: real estate taxes, mortgage payments, insurance premiums, main *327 tenance costs, heating bills, and water and sewage assessments, to name a few. Maintaining steady cash flow from timely rental payments is vital. Small landlords need ongoing rent to meet ongoing expenses.
Mirroring the first law of thermodynamics, which holds that energy is neither created nor destroyed but merely transformed, defaulted rents do not waft away. They translate into higher costs for other tenants, especially because landlords cannot screen for tenants who have defaulted. Searching the court records will reveal whether a tenant was involved in landlord-tenant proceedings; it will not reveal whether a tenant left arrears in default. RPAPL 747 (4) provides that “such judgment need not be recorded or docketed in the books, if separately maintained, in which are docketed money judgments in an action.”
RPAPL 741 (5) provides that the court may enter “a judgment for rent due.” Section 747 (4) authorizes the court to enter a judgment for “such money as [the court] may award for rent or otherwise.” And the Housing Part may “render judgment for rent due without regard to amount.” (3 Dolan, supra, § 45:13, at 172; accord CCA 110 [a] [5].) These provisions allow the unified court system to award money and possession in one case.
Thus, the court acquires personal jurisdiction over a defaulting tenant when the petition and notice of petition are served in a summary proceeding using conspicuous-place service after due diligence in attempting personal delivery or substituted service. A landlord is therefore entitled to a default judgment of possession and a default money judgment for the arrears demanded in the nonpayment petition if the tenant fails to answer the petition or to date if the landlord proves at a holdover inquest that use and occupancy is due.
Furthermore, because substituted service equals in-hand personal delivery in summary proceedings, the court has personal jurisdiction to grant a default money judgment for the arrears demanded in a nonpayment petition if a tenant fails to answer the petition or to date after the landlord proves at a holdover inquest that use and occupancy is due.
The court awards only the rent demanded in the Dolan nonpayment petition and the use and occupancy through the Maxean holdover inquest date. The court may not, on default, award legal fees, late fees, or anything but the sum certain of arrears and use and occupancy, even as a nonpossessory judgment. (See e.g. Port Chester Hous. Auth. v Turner, 189 *328 Misc 2d 603, 604 [App Term, 2d Dept 2001, mem] [holding it erroneous in nonpayment proceeding to award on default more than landlord demands in petition or, unless clearly authorized, to award nonrent items, even if characterized as additional rent].)
As Professor Siegel observed, “This conflict has been around for too long, apparently because the stakes in any individual case have been too small to warrant full and persistent appellate steps by either side.” (David D. Siegel, Jurisdiction for Rent Judgment, 127 Siegel’s Prac Rev 3, col 3 [Sept. 2002].) Perhaps this opinion will help lead to appellate clarification.