Batiz v CSA Preserv. Partners LLC (2025 NY Slip Op 25170)

[*1]

Batiz v CSA Preserv. Partners LLC

2025 NY Slip Op 25170

Decided on July 25, 2025

Civil Court Of The City Of New York, Bronx County

Lutwak, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 25, 2025
Civil Court of the City of New York, Bronx County

Miguel Angel Batiz, Petitioner,

against
CSA Preservation Partners LLC, C & C Apartment Management, Respondents.

Index No. LT-001947-25/BX

Petitioner pro se
Attorney for Respondents:
Robert Marino, Esq.
Cullen & Associates PC
299 Broadway, Suite 1510
New York, New York 10007
212-233-9772
Rob@CullenPC.com

Diane E. Lutwak, J.

This is an alleged illegal lockout proceeding commenced by Order to Show Cause and Verified Petition filed by Miguel Angel Batiz (Petitioner) against CSA Preservation Partners LLC and C&C Apartment Management (Respondents) on July 11, 2025 regarding the premises known as 1138 East 229th Street Drive South, Apartment #3A, in the Bronx (the apartment). The case was originally calendared for July 21, 2025. Petitioner appeared pro se and Respondents appeared by counsel. The case was adjourned to July 24, 2025 for trial, when Respondents filed an Answer raising defenses of failure to state a cause of action and lack of standing and raising a counterclaim for attorney's fees of $5000.
TRIAL
Each side called one witness. Petitioner testified credibly to the following on direct and cross-examination: Since the Spring of 2021 he has been living in the apartment, renting one of [*2]the two bedrooms from leaseholder Henry Diaz, and spending just about every night there up until July 11, 2025. They had an oral agreement under which Petitioner agreed to pay Henry $300 a month and give him access to his Optimum Wi-Fi. Petitioner paid Henry either by Zelle from his Chase Bank Account, in cash, or through the "Cash App" that he helped Henry set up. Sometimes Henry would ask him for money and he would give him small advance cash payments. Henry would not give Petitioner receipts, or let him pay by any other method, as he was afraid he would lose his Section 8, public assistance and food stamps. 
Admitted into evidence over Respondents' objection as Petitioner's Exhibit 1 were seven pages of screenshots of Petitioner's Chase Bank statements, with the oldest statement showing a Zelle payment of $300 to "Henry" on May 21, 2021 and, more recently, a "Cash App" payment of $5.00 to Henry Diaz on May 19, 2025 and a Zelle Payment of $20 from Henry Diaz on May 30, 2025. This was not a complete set of all of Petitioner's bank statements since 2021; Petitioner testified that the oldest was to show his "longevity" in the apartment and he could have printed out a complete set if he had access to his printer and supplies. 
Admitted into evidence over Respondents' objection as Petitioner's Exhibit 2 were five pages of screenshots of numerous small "Cash App" payments made to Henry Diaz during the period of May 16, 2025 through June 26, 2025. 
Admitted into evidence without objection as Petitioner's Exhibit 3 were copies of two Optimum bills addressed to Petitioner at the subject premises, dated July 22, 2024 and July 22, 2025. Petitioner opened the Optimum account in 2021 when he moved in; he can't close the account because to do so he must turn in the equipment, which is in the apartment. 
Petitioner had exclusive use of the first bedroom in the apartment on the left after the bathroom, the closet in that room, and a closet in the hallway across from the bedroom. Petitioner also kept some of his things in the bathroom, kitchen and living room, which he described in detail as follows: an over-the-toilet storage rack, hair dryer, and miscellaneous other items in the bathroom; seasonings, oil, other food items, dishwashing liquid and dishes in the kitchen; and, in the living room, a red personal cart, a larger grocery store cart, various items in those carts, and two folding tables — a large gray one and a smaller wooden one with shelves.
Petitioner filed this case after Respondents' employees knocked on the door and told him he had to leave. A locksmith came, changed the bottom lock, and Respondents' employees told Petitioner to "grab what you can" and go to court to file papers. Petitioner followed those instructions and filed the papers to commence this proceeding the same day, July 11, 2025. Two days before this happened, Henry Diaz had passed away. Petitioner, who works nights as a chef in a restaurant, had come home from a 13-hour work shift at around 3:00 a.m., found Henry dead in the apartment and called the police. He had to go to work late that next day because he had to stay in the apartment to deal with the police, ambulance and coroner. No one from Respondents' management company came to the apartment that day.
About two weeks before Henry died, when Petitioner happened to be home because he had called out from work, someone came to the door to padlock it; however, because he was there this didn't happen. Petitioner spoke to someone in Respondents' management office about how Henry wasn't paying his bills. He was told that because he's not on the lease, they were not interested in what he had to say. Other than this conversation, up until the day he was locked out Petitioner did not have any interactions with any of Respondents' employees, did not know the building's superintendent, and it was his belief that Respondent C&C Management had recently taken over the property. 
Petitioner acknowledged that his New York State ID card, a copy of which is attached to the Petition, does not list the apartment as his address. The address on that ID card is his parents', which he uses as a mailing address and described as, "the only safe place I can get any mail."
Petitioner also testified about events occurring on July 14, 2025, when he filed a police report after discovering that someone he described as "a homeless person" had drilled the lock and entered the apartment. This person had claimed he had a cat in the apartment; the only cat in the apartment was Henry's, it generally stayed in his room and, apparently, may still be in the apartment. Respondents' Security Director did not take any action to address these problems on July 14; it was Petitioner who had to call the police.
Respondents' witness was Joseph Ramlall, who has worked for Respondents as a general manager, overseeing various building operations, for the past two years. Mr. Ramlall testified that he was not directly familiar with the last tenant of record, Henry Diaz, and his knowledge and information comes from reviewing Mr. Diaz's tenant file in the management office. That file contains no mention of Petitioner. Admitted into evidence without objection as Respondents' Exhibit A was Mr. Diaz's "PACT" (Permanent Affordability Commitment Together program) lease, dated October 27, 2023. In this lease, Mr. Diaz is listed as the only tenant and the only member of the household. Admitted into evidence without objection as Respondents' Exhibit B was a document entitled "New York City Housing Authority—Section 8 Tenant Profile", also showing that Henry Diaz was the tenant and sole household member.
Mr. Ramlall did not go to the building and was not present at the time Respondents' staff went to secure the apartment after learning of Mr. Diaz's death.
In a closing statement, Respondents' attorney argued that this court should dismiss this proceeding as Petitioner is a mere licensee without possessory rights who is not entitled to be restored to possession in this proceeding under RPAPL § 713(10), citing to Qian "Lily" Zhu v Ziao "Joy" Hong Li (70 Misc 3d 139[A], 138 NYS3d 792 [App Term 2nd Dep't 2021]); Andrews v Acacia Network (59 Misc 3d 10, 70 NYS3d 744 [App Term 2nd Dep't 2018]); and this court's decision in Jimenez v 1171 Wash Ave, LLC (67 Misc 3d 1222[A], 128 NYS3d 150 [Civ Ct Bx Co 2020]), which relied in large part on the analysis in Andrews.
DISCUSSION
Under Section 711 of the Real Property Actions and Proceedings Law (RPAPL), as amended by the Housing Stability and Tenant Protection Act of 2019 (HSTPA), "No tenant or lawful occupant of a dwelling or housing accommodation shall be removed from possession except in a special proceeding." Under NYC Administrative Code § 26-521, as well as under RPAPL § 768, also enacted as part of HSTPA, a tenant or occupant of an apartment who has had legal possession for at least thirty days may not be ousted by the landlord or leaseholder without resort to proper legal process including notice and an opportunity to be heard in court. Romanello v Hirschfeld (98 AD2d 657, 470 NYS2d 328 [1st Dep't 1983], aff'd as modified, 63 NY2d 613, 468 NE2d 701, 479 NYS2d 519 [1984]); Deryck v 98 Morningside (2008 NY Misc LEXIS 8858, 2008 NY Slip Op 31397[U][Sup Ct NY Co 2008]); Bascus v Lake (2020 NY Misc LEXIS 1451, 2020 NY Slip Op 50425[U][Civ Ct Bx Co 2020]). 
RPAPL § 713(10) provides the procedural vehicle for addressing a "forcible or unlawful entry or detainer," otherwise known as an "illegal lockout", Goncalves v Soho Vil Realty, Inc (47 Misc 3d 76, 9 NYS3d 522 [App Term 1st Dep't 2015]), and under RPAPL § 853 remedies include treble damages.
Prior to enactment of HSTPA, in many court decisions, including the ones cited by Respondents' attorney, illegal lockout proceedings filed by individuals characterized as "licensees" were dismissed unless the petitioner raised a claim of succession rights to a rent regulated apartment as a remaining family member of the last tenant of record. In Qian "Lily" Zhu v Ziao "Joy" Hong Li, supra, the Appellate Term, Second Department affirmed the lower court's order dismissing an illegal lockout petition, finding that the petitioner, who was the daughter of the respondent, "was a licensee and not a tenant because, among other things, she was not given exclusive possession of designated space in her mother's home". In Andrews v Acacia Network, supra, the Appellate Term, Second Department reversed the lower court's order granting an illegal lockout petition, finding that the petitioner, an occupant of a shared room in a supportive living facility, had not been give "exclusive dominion and control of a specifically identified portion of the premises". The Appellate Term, First Department in Padilla v Rodriguez (61 Misc 3d 133[A], 110 NYS3d 865 [App Term 1st Dep't 2018]), and Korelis v Fass (26 Misc 3d 133[A], 907 NYS2d 101 [App Term 1st Dep't 2010]), upheld lower courts' dismissals of illegal lockout petitions after trial where the petitioners had failed to demonstrate that they had an independent right to possession of the apartment; however, the facts of Padilla included that the petitioner was a Section 8 tenant of a different apartment and the facts of Korlis were not provided.
Here, while Petitioner does not raise a succession claim to this rent-regulated "PACT" apartment, the credible evidence at trial established that the tenant of record gave him "exclusive dominion and control" of one of the two bedrooms and of a separate closet in the hallway of the apartment; that he paid rent to the tenant of record; and that he lived there for approximately four years. Petitioner herein was not a visitor with another address or a participant in a supportive housing program. The facts here are not comparable to any of those in the above-cited decisions, which therefore are not controlling.
Moreover, the above-cited cases (except for this court's decision in Jimenez) all preceded the enactment of HSTPA, and the Appellate Term, Second Department in its very recent opinion in Rodriguez v Hub Bk LLC (AT Docket # 2202-984 KC [App Term 2nd Dep't July 18, 2025])(as yet unreported, copy available on NYSCEF as Doc #32 under LT-010251-22/KI), appears to have just overruled certain aspects of its pre-HSTPA decisions in illegal lockout cases. The petitioner in Rodriguez was an occupant who commenced an illegal lockout proceeding under RPAPL § 713(10) after the landlord changed the locks to the premises upon the death of one tenant of record and surrender by the other. The court noted that it was undisputed that the petitioner had resided in the subject apartment for several years with the deceased tenant and up until they were locked out. The lower court had dismissed the proceeding, finding that it would be futile to restore the petitioner to possession as she had not demonstrated any possessory rights to the subject premises, citing Andrews v Acacia Network, supra. The Appellate Term, Second Department reversed the trial court, with the following analysis:
As of the enactment of the Housing Stability and Tenant Protection Act of 2019 ([HSTPA], L 2019, ch 36), which applies to this proceeding, "[n]o tenant or lawful occupant of a dwelling or housing accommodation shall be removed from possession except in a special proceeding" (RPAPL § 711 [emphasis added]). Thus, a "lawful occupant" is statutorily among those considered to be "in possession" of the premises for purposes of removal therefrom in a summary proceeding pursuant to RPAPL Article 7, and such person cannot be removed from possession by self-help. While "lawful [*3]occupant" is not defined, RPAPL § 713 permits a special proceeding to be maintained against a number of categories of occupants under specified circumstances, including, but not limited to, a licensee (see RPAPL § 713 [7]), where the entry into possession was lawful. The only type of occupant specifically excluded from the protections of RPAPL § 711 is a squatter—an unlawful occupant. It follows that a "lawful occupant" must be permitted to maintain a summary proceeding under RPAPL § 713 (10) (cf. RPAPL § 768 [1] [b]). Contrary to the Civil Court's decision, futility is no longer a consideration in proceedings commenced pursuant to RPAPL § 713 (10) because a lawful occupant is now entitled to the protections afforded by a summary proceeding before being evicted, even if the occupant is ultimately not entitled to possession. To the extent this court has held to the contrary, those cases should no longer be followed. Here, it is undisputed that occupant lived in the subject apartment with the permission of the tenants of record. Therefore, she is a lawful occupant and has standing to bring this RPAPL § 713 (10) proceeding. Further, as it is undisputed that she was locked out, she must be restored.
While the decisions of the Appellate Term of one judicial department are not binding on the lower courts of other departments, 29 Holding Corp v Diaz (3 Misc 3d 808, 816, 775 NYS2d 807, 813 [Sup Ct Bx Co 2004]), it must be noted that the appellate courts in the First Department have not yet ruled on this issue since HSTPA's enactment. Accordingly, this court may consider the Appellate Term, Second Department's recent decision in Rodriguez as persuasive and "strong if not binding authority", Dolan v Linnen (195 Misc 2d 298, 299, 753 NYS 682, 683 [Civ Ct Richmond Co 2003]).
As in Rodriguez, here, under the facts and circumstances established at trial through Petitioner's credible testimony and corroborating documents, the actions of Respondents' employees on July 11, 2025, approximately two days after the death of the tenant of record, when they told Petitioner to leave the apartment and then changed the locks, constituted an illegal eviction and Respondents must restore Petitioner to possession forthwith.
CONCLUSION
Based on the foregoing, it is hereby ORDERED that:
• A judgment of possession shall be entered in favor of Petitioner Miguel Angel Batiz and against Respondents CSA Preservation Partners LLC and C&C Apartment Management; AND
• Respondents shall restore Petitioner to possession forthwith by providing him with copies of all keys needed to access Apartment 3A at 1138 East 229th Street Drive South, Bronx, New York; AND
• In the event Respondents fail to immediately provide Petitioner with copies of all keys needed to access Apartment 3A at 1138 East 229th Street Drive South, Bronx, New York, Petitioner is permitted to hire a locksmith to install such locks and provide Respondents with copies of the keys; AND
• Respondents shall reimburse Petitioner for any expenses incurred to secure compliance with this Order; AND
• This decision and order are without prejudice to any other remedies Petitioner may have against Respondents including but not limited to damages for unlawful entry and detainer pursuant to RPAPL § 853; damages for loss of property; harassment under Local Law 7, NYC Administrative Code § 27-2004; and penalties for illegal eviction under New York City [*4]Administrative Code § 26-523.
This constitutes the Decision and Order of the court, which the court is emailing to Petitioner and to Respondents' attorneys.
Diane E. Lutwak, HCJ
Dated: July 25, 2025
Bronx, New York